EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Michael Tricoche Matos y Nordelys Rivera Carmona<br><br>Recurridos<br><br>v.<br><br>Luis Freire Div. of K.M.A. Associates of PR, Inc.<br><br>Peticionarios | Certiorari<br><br>2025 TSPR 92<br><br>216 DPR ___ |

Número del Caso: CC-2024-0548


Fecha: 1 de octubre de 2025


Tribunal de Apelaciones:

    Panel V


Representante legal de la parte peticionaria:

    Lcdo. Guillermo F. De Guzmán Vendrell


Materia: Derecho Administrativo – Facultad del Departamento de Asuntos del Consumidor para atender querellas presentadas electrónicamente.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Michael Tricoche Matos y
Nordelys Rivera Carmona

      Recurridos

         v.                    CC-2024-0548

Luis Freire Div. of K.M.A.
Associates of PR, Inc.

      Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 1 de octubre de 2025.

A propósito de esta ocasión, tenemos la oportunidad de examinar el poder de la judicatura para sustituir por su propio criterio los pronunciamientos no legislativos de una agencia. En específico, debemos resolver si el Tribunal de Apelaciones erró al concluir que no tenía jurisdicción para atender un recurso de revisión judicial bajo el fundamento de que una moción de reconsideración presentada a través del servicio en línea del Departamento de Asuntos del Consumidor (DACo) no interrumpió el término para recurrir del dictamen de la agencia. Adelantamos que el DACo cuenta con ciertas directrices no legislativas que orientan al público sobre la tramitación electrónica de querellas.

En efecto, estas facilitaron que la parte peticionaria presentara su solicitud de reconsideración. Por los fundamentos que proceden, revocamos la sentencia del foro recurrido.

I

El 9 de junio de 2023, el Sr. Michael Tricoche Matos y la Sra. Nordelys Rivera Carmona presentaron una querella ante el DACo contra la corporación Luis Freire Div. of K.M.A. Associates of PR, Inc. (Freire). En síntesis, adujeron que Freire incumplió con un contrato de fabricación e instalación de gabinetes de cocina. Por no estar satisfechos con la labor realizada, el señor Tricoche Matos y la señora Rivera Carmona solicitaron en su querella la devolución total del dinero pagado por la obra.

Luego de varios incidentes procesales, el 29 de abril de 2024 el DACo notificó una resolución en la cual ordenó a Freire corregir las deficiencias de la obra y realizar un pago a favor de los querellantes. Además, advirtió a las partes de su derecho a solicitar reconsideración del dictamen. En lo pertinente, la *Resolución* consigna lo siguiente: "Si la parte interesada opta por solicitar una Reconsideración, su solicitud DEBERÁ SER POR ESCRITO. Se recomienda incluir la palabra "Reconsideración" como título del documento, el cual podrá presentarse de modo presencial, o enviarse por correo postal". Ap. del *certiorari*, pág. 138.

Ante estas circunstancias, **el 17 de mayo de 2024 Freire solicitó oportunamente la reconsideración de la resolución a través de la página de internet del DACo, la cual promueve una plataforma electrónica para fines de procedimientos adjudicativos. Ese mismo día, Freire recibió un correo**

**electrónico de parte del DACo para confirmar el registro en el sistema de la moción de reconsideración** y notificó una copia de dicha moción al señor Tricoche Matos y a la señora Rivera Carmona. Antes bien, el 7 de junio de 2024 Freire acudió a las oficinas de la agencia para indagar sobre el estatus de su solicitud de reconsideración, puesto que se percató de que el expediente electrónico del caso no reflejaba la radicación de la moción. Allí, los empleados de la agencia le confirmaron que la moción no constaba en el sistema. Así pues, los empleados del DACo le requirieron a Freire que dejara una copia de la moción de reconsideración y que incluyera una nota a mano para explicar la situación. De inmediato, Freire procedió a cumplir con lo instruido. No obstante, **el foro administrativo no emitió ninguna resolución relacionada con la solicitud de reconsideración.**

Insatisfecho, el 1 de julio de 2024 Freire acudió ante el Tribunal de Apelaciones mediante un recurso de revisión judicial. Empero, el foro intermedio desestimó el recurso por falta de jurisdicción, ya que, según apreció, se presentó fuera del término de treinta (30) días contados desde la notificación de la resolución del 29 de abril de 2024, según dispone la ley. El foro apelativo fundamentó su decisión en que la moción de reconsideración presentada electrónicamente no tuvo el efecto de interrumpir el término para recurrir mediante revisión judicial. Al respecto, sostuvo que Freire no siguió la instrucción impartida por el DACo en su *Resolución*, la cual exigía que solicitara la reconsideración de modo presencial o vía correo postal.

Inconforme con el dictamen, el 6 de septiembre de 2024 Freire acudió ante nos mediante un recurso de *certiorari*. En esencia, sostuvo que erró el foro intermedio al desestimar el recurso de revisión judicial por falta de jurisdicción. Por ello, nos solicita que revoquemos la decisión del Tribunal de Apelaciones y declaremos que la presentación de la solicitud de reconsideración a través del servicio en línea del DACo interrumpió el término para recurrir al foro intermedio.

El 6 de diciembre de 2024, expedimos el auto discrecional y el 7 de febrero de 2025 Freire presentó su alegato. Sin embargo, la parte recurrida no radicó el suyo. Expuesto este trasfondo, procedemos a resolver.

II

**A.   *Delegación del poder de reglamentación***

La Asamblea Legislativa puede encomendar a las agencias administrativas implementar cierta política pública y delegarles los poderes necesarios para lograr ese objetivo. R&B Power, Inc. v. Junta de Subastas ASG, 213 DPR 685, 700 (2024); Sánchez *et al.* v. Depto. Vivienda *et al.*, 184 DPR 95, 119 (2011). Este poder se fundamenta en la Sec. 16 del Art. III de la Constitución de Puerto Rico, la cual concede a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. Art. III, Sec. 16, Const. PR, LPRA, Tomo 1, pág. 416. En virtud de la delegación legislativa, las agencias ostentan dos facultades esenciales, a saber: el poder de reglamentar y el poder de adjudicar controversias. R&B Power, Inc. v. Junta de Subastas

ASG, supra, pág. 700; Caribe Comms., Inc. v. P.R.T.Co., 157 DPR 203, 211 (2002).

En suma, la ley es "el medio o [la] fuente legal que establece los límites del poder y de las facultades de las agencias administrativas". Yiyi Motors, Inc. v. ELA, 177 DPR 230, 247 (2009). A esos fines, si la ley exige la promulgación de reglamentos para ejercer los poderes administrativos, la agencia tiene la obligación de adoptarlos. J. A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed., San Juan, SITUM, 2023, pág. 27. Sin embargo, antaño afirmamos que el decreto de un reglamento no es un requisito jurisdiccional para que las agencias ejerzan el poder delegado por ley. Procuradora Paciente v. MCS, 163 DPR 21, 45 (2004); ELA *et als.* v. Malavé, 157 DPR 586 (2002). Véase también, Camacho Huertas v. Compañía Turismo, 174 DPR 833 (2008) (Sentencia). Por los mismos fundamentos, la misma norma debe aplicar cuando la agencia se vale de un reglamento desfasado que no contempla su realidad operacional. Así pues, en ELA *et als.* v. Malavé, supra, pautamos que, mientras no se adopte un reglamento que defina la discreción de la agencia, "cada caso deberá evaluarse a la luz de sus hechos particulares para determinar si las medidas adoptadas son adecuadas o no". Íd., pág. 596.

En vista de este panorama, la Ley Núm. 5 de 23 de abril de 1973, conocida como la Ley Orgánica del Departamento de Asuntos del Consumidor (Ley Orgánica), 3 LPRA sec. 341 *et seq.*, creó el DACo con el propósito de, entre otras cosas, vindicar e implementar los derechos del consumidor. Art. 3 de la Ley Núm. 5, supra, 3 LPRA sec. 341b. Para ese fin, el Art. 15 de la Ley

Orgánica dispone que "[c]ualquier consumidor podrá radicar una querella en el Departamento para vindicar los derechos que le conceden las leyes del Estado Libre Asociado de Puerto Rico". Art. 15 de la Ley Núm. 5, supra, 3 LPRA sec. 341n.

Para concretizar sus objetivos, la Ley Orgánica faculta al Secretario del DACo para "[e]stablecer las reglas y normas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como de adjudicación, que celebre el Departamento". Art. 6 de la Ley Núm. 5, supra, 3 LPRA sec. 341e. Por su parte, la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 9601 et seq., instruye a todas las agencias a adoptar un reglamento para regular sus procesos adjudicativos. Sec. 3.2 de la Ley Núm. 38-2017, 3 LPRA sec. 9642. Por consiguiente, el DACo tiene el deber de establecer reglas adecuadas para ejercer su poder de adjudicación. En cumplimiento con esa disposición, la agencia promulgó el Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034, DACo, 14 de junio de 2011.

B. **Reconsideración y revisión judicial en el ámbito administrativo**

La LPAU define tanto el recurso de revisión judicial como la reconsideración ante una agencia. Sobre el recurso de revisión judicial, la LPAU dispone que una parte adversamente afectada por una orden o resolución final de una agencia, que haya agotado todos los remedios disponibles, podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones dentro de un término de treinta (30) días, contados a partir de la fecha del archivo en autos de la copia de la

notificación de la orden o resolución final o a partir de la fecha aplicable de las dispuestas en la Sec. 3.15 de la LPAU cuando el término haya sido interrumpido por la presentación oportuna de una moción de reconsideración. Sec. 4.2 de la Ley Núm. 38-2017, 3 LPRA sec. 9672.

A su vez, sobre la reconsideración ante el organismo administrativo, en lo pertinente la LPAU consigna lo siguiente:

### § 9655. Reconsideración

La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Sec. 3.15 de la Ley Núm. 38-2017, 3 LPRA sec. 9655.

Al respecto, la Regla 29 del Reglamento Núm. 8034, supra, contiene lenguaje análogo sobre la revisión judicial y la reconsideración. Sin embargo, nada dispone sobre la forma en que han de presentarse dichos escritos. Para ello, debemos acudir a la Regla 5.2, la cual expresa que:

Los trámites relacionados con la querella serán diligenciados personalmente, o por correo ordinario. **Toda radicación de querellas, documentos, y reconsideraciones, se harán en el Departamento en la Oficina Regional correspondiente, por correo o cuando existan las facilidades y recursos disponibles, mediante tele-copiador (fax) o correo electrónico.** Cuando se utilicen estos últimos la evidencia de la radicación será la confirmación con fecha y hora de transmisión del documento. (Énfasis suplido). Regla 5.2 del Reglamento Núm. 8034, supra.

De entrada, notamos que el propio reglamento no limita el proceso de querellas a los medios tradicionales, más bien sujeta

la modalidad de presentación de documentos a las facilidades y recursos de la agencia. Cónsono con la Regla 32 del Reglamento Núm. 8034, supra, la cual exige que se interpreten las reglas de "forma liberal de modo que se garantice una solución rápida, justa y económica de todo procedimiento", debemos auscultar aquellas directrices que orientan al público sobre las nuevas facilidades para la tramitación de querellas ante el DACo.

### C.    *Reglas legislativas y no legislativas*

Es un principio del debido proceso de ley que "una agencia no puede ejercitar su discreción de manera arbitraria o caprichosa". Asoc. Fcias. Com. v. Depto. de Salud, 156 DPR 105, 130 (2002). Por esta razón, las agencias están llamadas a fijar normas que delimiten su quehacer administrativo conforme a la ley que las origina, de manera que el público entienda cuáles son tanto sus deberes y obligaciones como sus derechos y los procedimientos para hacerlos valer. Pertinente al caso de marras, destacamos que en esta encomienda los organismos administrativos pueden formular reglas legislativas y reglas no legislativas. R&B Power, Inc. v. Junta de Subastas ASG, supra, pág. 701; Sierra Club *et al.* v. Jta. Planificación, 203 DPR 596, 605 (2019).

La Sec. 1.3(m) de la LPAU define regla o reglamento como la norma de una agencia "que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia que tenga fuerza de ley". Sec. 1.3(m) de la Ley Núm. 38-2017, 3 LPRA sec. 9603. Esta define propiamente lo que llamamos regla legislativa. No obstante, la LPAU excluye de la definición de

regla o reglamento a los siguientes: (1) reglas de administración interna de la agencia; (2) comunicaciones internas de la agencia o entre agencias; (3) **documentos guía**; (4) órdenes de precio del DACo y otros decretos similares, y (5) formas y sus instrucciones. Íd. Estas excepciones a la definición son propiamente lo que llamamos reglas no legislativas.

El criterio para distinguir entre ambos tipos de regla es que, mientras la regla legislativa "crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley", las reglas no legislativas "no alteran los derechos ni las obligaciones de los individuos" y carecen de fuerza de ley. R&B Power, Inc. v. Junta de Subastas ASG, supra, págs. 701-702; Sierra Club *et al.* v. Jta. Planificación, supra, pág. 605. A tono con esta naturaleza disímil, la LPAU dispensa a las reglas no legislativas del requisito formal de reglamentación. Sec. 2.20 de la Ley Núm. 38-2017, 3 LPRA sec. 9630; Sierra Club *et al.* v. Jta. Planificación, supra, pág. 605. Así, este tipo de regla no puede contrariar a las legislativas. Mun. de San Juan v. J.C.A., 152 DPR 673, 692 (2000).

En virtud de esta clasificación, hemos sido enfáticos en que las reglas no legislativas "pueden ser modificadas judicialmente". Agosto Serrano v. F.S.E., 132 DPR 866, 873 (1993). Esto es, **"como dichas reglas no se promulgan con fuerza de ley, los tribunales pueden sustituir su juicio por el de la agencia cuando se enfrentan a una regla interpretativa"**. (Negrillas suplidas). Asoc. Fcias. Com. v. Depto. de Salud, supra, pág. 146. Ahora bien, nunca nos hemos expresado sobre el

estándar aplicable para llevar a cabo dicha sustitución. De ese modo, en consideración de que nuestro derecho administrativo se nutre del desarrollo de esta materia en Estados Unidos, en esta ocasión analizamos la doctrina federal pertinente.

En Skidmore v. Swift & Co., 323 U.S. 134 (1944), citado con aprobación en Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), el Tribunal Supremo federal dictó que los pronunciamientos no legislativos de las agencias, a pesar de no ser vinculantes para los tribunales, "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía". Íd., pág. 140. Véase, Vázquez y otro v. Condominio Los Corales, 2025 TSPR 56, pág. 27, 215 DPR ___ (2025). A esos efectos, **para determinar si una regla no legislativa debe servir de guía en su función adjudicativa, el magistrado tiene que evaluar rigurosamente aquellos factores circunstanciales que resulten persuasivos para su análisis independiente**; entre estos, la minuciosidad empleada por la agencia en la consideración de la directriz, la coherencia lógica de esta, su consistencia con pronunciamientos anteriores y posteriores, y el momento en que se adoptó. Skidmore v. Swift & Co., supra, pág. 140; Young v. United Parcel Service, Inc., 575 U.S. 206, 224-225 (2015). De tal manera, el tribunal podrá acoger las directrices no legislativas de una agencia si las entiende legítimas; no obstante, deberá modificarlas si estas permiten al foro administrativo actuar de forma irrazonable, arbitraria o caprichosa. Véase, K. E. Hickman & R. J. Pierce, Jr., *Administrative Law Treatise*, 7ma ed., New York, Wolters Kluwer,

2024, Vol. I, pág. 449. Evidentemente, el poder para revisar las reglas no legislativas se funda en la responsabilidad primaria de la judicatura para interpretar la ley y examinar la legalidad de las actuaciones administrativas. Cfr., Loper Bright Enterprises v. Raimondo, supra.

Por su parte, hemos reconocido varios fines para los cuales se decretan las reglas no legislativas. En Agosto Serrano v. F.S.E., supra, expresamos que estas se promulgan para darle uniformidad a los procesos administrativos internos y para "pautar la discreción administrativa". Íd., pág. 873. Más adelante, en Mun. de San Juan v. J.C.A., supra, dictamos que las reglas no legislativas ofrecen una "clarificación de la ley que administra [la agencia] o de sus reglas o reglamentos". Íd., pág. 692. Por otra parte, en Asoc. Fcias. Com. v. Depto. de Salud, supra, dijimos que las reglas no legislativas pueden configurarse en forma de declaraciones generales de política pública "para informar al público sobre las intenciones de las agencias y para pautar la discreción administrativa". Íd., pág. 148. Asimismo, en Asociación Maestros v. Comisión, 159 DPR 81 (2003), fundamentamos su función en que "clarifican e interpretan las obligaciones y los deberes fijados por el estatuto orgánico". Íd., pág. 95. Luego, en Tosado v. A.E.E., 165 DPR 377 (2005), enfatizamos que las reglas no legislativas se crean con el propósito de "fijar directrices y para pautar la discreción administrativa" y, además, para otorgarle a la agencia la "flexibilidad que necesita […] al regular [sus] asuntos internos". Íd., pág. 390. A su vez, en Crespo Claudio v. O.E.G., 173 DPR 804 (2008), expresamos que este instrumento

representa un vehículo informativo y un "mecanismo adicional para que las agencias hagan constar su posición formal sobre las leyes y los reglamentos que administran". Íd., págs. 819-820.

En este contexto, la Sec. 1.3(c) de la LPAU define documento guía de la forma siguiente:

> [U]n documento físico o electrónico de aplicabilidad general desarrollado por una agencia, que carece de fuerza de ley pero expresa la interpretación de la agencia sobre alguna legislación, la política pública de la agencia o que describe cómo y cuándo la agencia ejercerá sus funciones discrecionales. Incluye interpretaciones oficiales, según definidas en esta Ley. Este término no incluye documentos que son reglamentos o reglas según definidas en esta Ley. Sec. 1.3(c) de la Ley Núm. 38-2017, 3 LPRA sec. 9603.

En términos comparativos, señalamos que la definición de documento guía ("*Guidance document*") contenida en la *Revised Model State Administrative Procedure Act* del 2010 (MSAPA) es similar a la preceptuada en nuestra LPAU ("'*Guidance document*' *means a record of general applicability developed by an agency which lacks the force of law but states the agency's current approach to, or interpretation of, law, or describes how and when the agency will exercise discretionary functions*", Art. 1, Sec. 102(14)). El comentario de la Sec. 102 de las reglas modelo reconoce la necesidad de las agencias para divulgar documentos que sirvan de guía tanto para sus empleados como el público. Íd., Sec. 102, Comment. A tenor de esto, la LPAU impone el deber a las agencias de mantener un récord físico y público de todos sus documentos guía y de publicarlos en su página cibernética de manera permanente, continua, gratuita y de fácil acceso. Sec. 2.20 de la Ley Núm. 38-2017, 3 LPRA sec. 9630.

En consecución del deber de establecer normas para el trámite de querellas, el DACo publicó una serie de documentos guía para orientar al público sobre el uso del servicio en línea para los procedimientos adjudicativos. A esos efectos, el documento titulado *El trámite de resolución de querellas en el DACo*, preparado en diciembre 2021, instruye al público sobre los problemas comunes que enfrentan los consumidores cuando presentan una reclamación. DACo, "El trámite de resolución de querellas en el DACo", https://www.daco.pr.gov/2021/12/el-tramite-de-resolucion-de-querellas-en-el-daco/ (última visita, 17 de junio de 2025). En lo pertinente, el documento informa que un consumidor **podrá presentar una querella de <u>modo presencial</u> en una de las oficinas regionales del DACo <u>o</u> de <u>modo virtual</u> a través de la página de internet de la agencia.**

Asimismo, en la página de internet del DACo, particularmente en la sección de documentos de ayuda, la agencia cuenta con documentos que orientan al litigante sobre los servicios de la plataforma. Entre estos, figura el *Manual de servicios en línea para el consumidor*, preparado en noviembre 2017, el cual es una guía general sobre cómo utilizar los distintos recursos del sistema. DACo, "Manual de servicios en línea para el consumidor", https://serviciosenlinea.daco.pr.gov/Pages/Public/PortalReferenceDocumentList.aspx (última visita, 17 de junio de 2025). Además, ofrece una *Guía para registrarse como abogado y presentar mociones en línea* y una *Guía para presentar mociones en línea*. DACo, "Guía para registrarse como abogado y presentar mociones en línea", https://serviciosenlinea.daco.pr.gov/Pages/Public/Portal

ReferenceDocumentList.aspx (última visita, 17 de junio de 2025); DACo, "Guía para presentar mociones en línea", https://serviciosenlinea.daco.pr.gov/Pages/Public/Portal ReferenceDocumentList.aspx (última visita, 17 de junio de 2024). En ambos documentos, la agencia detalla las instrucciones necesarias para presentar una moción de modo virtual. Incluso, menciona que, luego de presentar la moción, el presentante recibirá una notificación de confirmación del registro de la moción en su correo electrónico, como efectivamente recibió Freire el 17 de mayo de 2024.

Ante este escenario, pasemos ahora a disponer de la controversia.

III

En el recurso ante nuestra consideración, Freire sostiene que el Tribunal de Apelaciones desestimó el recurso de revisión judicial erróneamente, ya que la presentación de la solicitud de reconsideración de modo virtual interrumpió el término para recurrir ante ese foro. En lo particular, Freire arguye que el foro intermedio erró al equiparar una advertencia en cuanto a que la reconsideración debía presentarse de modo presencial o por correo —según quedó plasmado en la *Resolución* del DACo del 29 de abril de 2024— con una limitación normativa. Luego de examinar los documentos pertinentes y la doctrina jurídica aplicable, concluimos que le asiste la razón a la parte peticionaria.

En primer lugar, afirmamos que las directrices relacionadas al trámite virtual de querellas antes expuestas son reglas no legislativas que dan efecto a un mandato

legislativo. La razón para esto es que, si bien eluden el proceso de reglamentación formal, no alteran los derechos ni las obligaciones de las partes litigantes ante el DACo. Es decir, no coartan el procedimiento adjudicativo contemplado en el Reglamento Núm. 8034, supra, más bien incorporan la vía electrónica para el trámite de querellas bajo las mismas pautas procesales que establece dicho reglamento y sin proscribir los medios tradicionales de tramitación disponibles al público.

En este contexto, dado que los tribunales pueden suplantar el criterio no legislativo de las agencias, Agosto Serrano v. F.S.E., supra, pág. 873; Asoc. Fcias. Com. v. Depto. de Salud, supra, pág. 146, debemos resolver si el Tribunal de Apelaciones erró al desestimar el recurso de revisión judicial presentado por Freire. Decidimos que, aunque el DACo no cuenta con un reglamento de procedimientos adjudicativos que contemple los avances tecnológicos de su servicio en línea, el foro intermedio abusó de su discreción al ignorar las reglas no legislativas que orientan al público sobre el uso del sistema para cursar los procedimientos adjudicativos. Por consiguiente, el Tribunal de Apelaciones erró al desestimar el recurso de revisión judicial.

No podemos obviar que existe una clara política pública del Estado dirigida a incorporar el uso de tecnologías de la información en el funcionamiento gubernamental. Ejemplo de ello son la Ley Núm. 151-2004, conocida como la Ley de Gobierno Electrónico, 3 LPRA sec. 991 et seq.; la Ley Núm. 75-2019, conocida como la Ley de la Puerto Rico Innovation and Technology Service, 3 LPRA sec. 9861 et seq., y la Ley Núm. 16-2025. Esta

última —la cual entró en vigor posterior a los hechos del caso— impone el deber a las agencias de establecer mecanismos tecnológicos para los procedimientos adjudicativos y adoptar la reglamentación necesaria para su funcionamiento. Arts. 1 y 2 de la Ley Núm. 16-2025, supra.

En efecto, reconocemos que la plataforma electrónica del DACo adelanta la política pública general de incorporar mecanismos tecnológicos en el ordenamiento administrativo. Aún más, es evidente que las directrices en cuestión no exceden el mandato legislativo de la ley orgánica de la agencia; antes bien, propician la obtención del objetivo primordial de habilitar una plataforma adjudicativa para que los consumidores vindiquen sus derechos.

Además, no surge de los autos que la agencia haya utilizado los documentos guía en consideración para actuar de manera arbitraria, caprichosa o en detrimento de las partes. Concretamente, no consta que el foro administrativo haya expresado reparo en cuanto a la presentación virtual de la reconsideración. En realidad, lo que sucedió fue que la agencia no actuó dentro de los quince (15) días de presentada la moción, según dispone la ley. Sec. 3.15 de la Ley Núm. 38-2017, 3 LPRA sec. 9655.

En fin, somos del criterio de que no pueden perjudicarse los derechos de las partes porque la agencia faltó a la obligación de revisión periódica de sus reglamentos requerido por la Sec. 2.19 de la LPAU, 3 LPRA sec. 9629, y la parte peticionaria confió en las directrices del DACo para solicitar la reconsideración. De modo que, mientras el foro

administrativo no reglamente formalmente el uso de la plataforma electrónica como lo requiere la Ley Núm. 16-2025, supra, las pautas que guían al usuario sobre el uso del sistema tendrán vigencia provisional por tratarse de medidas administrativas idóneas que abonan a la eficiencia en los procesos contenciosos. Así pues, las directrices sirven adecuadamente para suplementar tentativamente la falta de un reglamento adjudicativo actualizado.

Ante un escenario como este, un tribunal no puede sustituir el criterio de la agencia por el suyo propio en detrimento de las partes, ya que constituye un abuso de discreción. No obstante, resaltamos que la judicatura tiene discreción para fundarse en reglas no legislativas cuando las entienda legítimas y, a su vez, está facultada para modificarlas cuando la agencia las utilice para actuar de forma irrazonable, arbitraria, caprichosa o en desacuerdo con la ley. Véase, Skidmore v. Swift & Co., supra, págs. 139-140; K. E. Hickman & R. J. Pierce, op. cit., págs. 445-449. Para realizar esa función, el magistrado debe ponderar el valor de las directrices pertinentes a la luz de aquellos factores que le resulten persuasivos. Skidmore v. Swift & Co., supra, pág. 140. **En consecuencia, un tribunal podrá sustituir el criterio no legislativo de una agencia bajo el estándar desglosado, siempre y cuando no incurra en un abuso de discreción.**

Por lo anterior, es forzoso concluir que la solicitud de reconsideración presentada por Freire, a través del servicio en línea del DACo, efectivamente interrumpió el término para recurrir al Tribunal de Apelaciones. Como resultado, erró el

foro intermedio al desestimar el recurso de revisión judicial por falta de jurisdicción, puesto que se presentó dentro del término que dispone la ley.

IV

Por los fundamentos antes expuestos, se revoca el dictamen del Tribunal de Apelaciones. Se devuelve el caso a ese foro para la continuación de los procedimientos, de forma compatible con este dictamen.

Se dictará Sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Michael Tricoche Matos y
Nordelys Rivera Carmona

      Recurridos

      v.                 CC-2024-0548

Luis Freire Div. of K.M.A.
Associates of PR, Inc.

      Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 1 de octubre de 2025.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca el dictamen del Tribunal de Apelaciones. Se devuelve el caso a ese foro para la continuación de los procedimientos, de forma compatible con este dictamen.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez hizo constar la expresión de conformidad siguiente:

Hoy este Tribunal da un paso firme de avanzada que adelanta el acceso a la justicia administrativa y apelativa en la era digital por medio de una interpretación novel de las directrices no legislativas promovidas por una agencia administrativa y de su impacto en los servicios que ofrece a la ciudadanía. En esencia, se reconoce una vía adicional disponible al público para la presentación de mociones y el trámite de asuntos ante el Departamento de Asuntos del Consumidor (DACo). Por esas razones, estoy conforme con la *Opinión* que hoy emitimos.

En atención a la importancia de esta controversia, considero oportuno expresarme y profundizar en algunas observaciones que estimo pertinentes.

Sobre el trámite procesal de este caso, resalto que la parte peticionaria, Luis Freire Div. of K.M.A. Associates of PR, Inc. (Freire o parte peticionaria), señaló prominentemente como error que la determinación del Tribunal de Apelaciones atentó contra el acceso a la justicia.

En su *Petición de certiorari*, Freire argumentó que aplicar una interpretación restrictiva – declarar que la presentación de la moción de reconsideración por medio del Sistema Integrado de Asuntos del Consumidor (SIAC) fue inválida – constituiría un grave error en detrimento del acceso a la justicia de los ciudadanos que confían en ese mecanismo electrónico. Además, según planteó, se traicionaría el espíritu de la normativa vigente, se adoptaría una visión arcaica de las reglas procesales aplicables y se negarían los principios de equidad que deben guiar la hermenéutica. Para la parte peticionaria, esa interpretación restrictiva contraviene los objetivos de un sistema electrónico implantado precisamente para facilitar y modernizar la gestión de casos. En consecuencia, arguyó que se ignoraría la realidad operativa y las costumbres establecidas en el DACo, donde la radicación electrónica es común y esencial para la agilidad y eficiencia de su proceso adjudicativo.

En los méritos, adujo que el Reglamento de Procedimientos Administrativos del DACo, Reglamento Núm. 8034 de 13 de junio de 2011, no restringe la forma de presentar la solicitud de reconsideración y, al así hacerlo, refleja una intención clara de facilitar el acceso efectivo a un remedio administrativo y evitar que formalismos innecesarios impidan que las partes afectadas ejerzan sus derechos. A eso, sumó que ese reglamento también requiere que la interpretación de sus reglas promueva la eficiencia sin perpetuar obstáculos procesales que no tengan justificación en el texto de la norma. Por esa razón, y porque el derecho de acceso lo justifica, la parte peticionaria propuso una aplicación liberal que represente un rechazo al formalismo que, a menudo, ha restringido el acceso efectivo a la justicia. A su juicio, la adopción del SIAC no puede verse aislada de la necesidad de un análisis normativo que respalde y valide la innovación tecnológica.

Esto pues, según plasmó, no puede haber modernización real si las normas no evolucionan al mismo ritmo que la tecnología.

Por todo ello, nos llamó a reafirmar la necesidad de una interpretación normativa en sintonía con las realidades operativas del DACo y en respaldo de la modernización que ha emprendido esa agencia. Al respecto, solicitó que reconozcamos la validez de la presentación electrónica de solicitudes de reconsideración para pautar un precedente que asegure que el acceso a la justicia se mantenga en armonía con los principios de acceso efectivo, eficiencia, modernización y equidad que deben guiar el derecho administrativo. En fin, nos invitó a pautar un mensaje claro: que los mecanismos electrónicos válidamente utilizados en procedimientos administrativos son suficientes para interrumpir términos procesales y, sobre todo, son esenciales para garantizar que la justicia administrativa sea ágil, accesible y oportuna.

Estos argumentos de Freire enmarcan correctamente las implicaciones de la controversia que este foro tenía ante sí en este caso. Es a la luz de ello que analizo los aciertos de la *Opinión* que hoy emitimos.

II

En nuestra jurisdicción, el derecho al acceso a la justicia es un pilar esencial de la política pública que guía el sistema judicial. Exposición de Motivos de la Ley Núm. 201-2003, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, 4 LPRA sec. 2 *et seq.* Tanto así que es un principio que permea todos nuestros ordenamientos procesales, ya sean el civil, el criminal, el apelativo o el administrativo. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1; Regla 1 de Procedimiento Criminal, 34 LPRA Ap. II, R. 1; Art. 4.002 de la Ley Núm. 201-2003, 4 LPRA sec. 24u; Sección 1.2 de la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9602. En aras de definir qué se quiere decir con acceso a la justicia, la Organización de las Naciones Unidas lo ha plasmado como la capacidad de las personas para buscar y obtener un remedio para sus agravios mediante instituciones de justicia formales o informales en conformidad con los derechos humanos. (Traducción nuestra). United Nations Development Programme, *Programming for Justice: Access for All: A Practitioner's Guide to a Human Rights-Based Approach to Access to*

*Justice*, Bangkok, UNDP, 2005, pág. 5. Asimismo, ha sido definido como un principio básico del estado de derecho que implica el derecho amplio y libre de discrimen de todos los individuos a utilizar herramientas y mecanismos legales para proteger sus derechos. (Traducción nuestra). V. Lima & M. Gómez, *Access to Justice: Promoting the Legal System as a Human Right*, en Leal Filho et al., Peace, Justice and Strong Institutions. Encyclopedia of the UN Sustainable Development Goals. Springer, Cham. (2020), pág. 1. Por su parte, el profesor Efrén Rivera Ramos ha nombrado el acceso a la justicia como "el conjunto de condiciones que facilitan o dificultan el que determinados grupos, sectores o personas puedan hacer uso equitativo de los mecanismos y procesos [necesarios] para la prevención de la violación de los derechos, para la solución de controversias y para la obtención de remedios legales". E. Rivera Ramos, *Las múltiples caras del acceso a la justicia*, en Primer Congreso Acceso a la Justicia - XXII Conferencia Judicial 8 (2005). Por eso, en el pasado, he denominado el acceso a la justicia como la llave maestra con la que se abren las puertas de otros derechos sustantivos y garantías procesales. *Meléndez de León et al. v. Keleher et al.,* 200 DPR 740, 795 (2018) (opinión disidente del Juez Asociado Señor Estrella Martínez); véase también, L. F. Estrella Martínez, *Acceso a la justicia: derecho humano fundamental*, 1ra ed., San Juan, Eds. SITUM, 2017, págs. 18 y 73.

De estas definiciones se desprenden dos asuntos primordiales. Primero, que el acceso a la justicia no se reduce al acceso a los tribunales de justicia, sino que se extiende a otros foros, como el administrativo, a los que las personas pueden acudir para obtener un remedio. *Landrau Cabezudo et al. v. Puertos et al.,* 215 DPR ___ (2025), 2025 TSPR 7 (opinión disidente del Juez Asociado Señor Estrella Martínez), citando a E. Rivera Ramos, *El acceso a la justicia en Puerto Rico: Antecedentes, desarrollos y retos*, 86 Rev. Jur. UPR 801, 802 (2017). Segundo, que al procurar un acceso a la justicia mayor y eficaz, corresponde preguntarse en qué medida las personas disfrutan efectivamente de los derechos que se les han reconocido. Íd. Al fin y al cabo, de poco sirven los derechos concedidos si no existen procedimientos para hacerlos valer. De esa forma, el derecho al acceso a la justicia nos dispensa un imperativo: acortar el espacio entre los derechos que se dice que una persona tiene y

su capacidad real de disfrutarlos. *Landrau Cabezudo et al. v. Puertos et al., supra*.

En la consecución de ese fin, la tecnología juega un importante rol como herramienta para garantizar un acceso efectivo a la justicia. Las iniciativas tecnológicas sirven para ayudar a las personas a acudir a los foros adjudicativos, administrar la justicia más eficientemente y atender a un público aún mayor. J. E. Cabral et al., *Using Technology to Enhance Access to Justice*, 26 Harv. J.L. & Tech. 241, 256-257 (2012). Para el Poder Judicial, la implementación del Sistema Unificado de Manejo y Administración de Casos (SUMAC) a nivel del Tribunal de Primera Instancia y, más recientemente, del Tribunal de Apelaciones, ha representado el apalancamiento de la tecnología para dispensar la justicia de forma más amplia, activa y ágil. Para el DACo, el equivalente ha sido el SIAC.

Incluso, las páginas web de estos foros han permitido que se informe a la ciudadanía al colocar información útil –como los documentos guía de una agencia administrativa– para navegar los distintos procedimientos que tienen disponibles. Tanto así que la Sección 2.20(e) de la LPAU requiere que las agencias administrativas publiquen todos y cada uno de sus documentos guía de forma prominente, permanente, continua, gratuita y de fácil acceso en su página de Internet. 3 LPRA sec. 9630. De esa manera, también se cumple con otro de los corolarios del acceso a la justicia: el conocimiento de los individuos de sus derechos y cómo exigirlos. *Landrau Cabezudo et al. v. Puertos et al., supra*, citando a F. Hernández Denton, *Acceso a la justicia y el estado de derecho*, 81 (Núm. 4) Rev. Jur. UPR 1129, 1132 (2012). Después de todo, de poco sirven los derechos concedidos si aquella persona a cuyo favor operan desconoce que los tiene y cómo los puede hacer valer.

Como la *Opinión* mayoritaria acierta al adelantar este alto interés público de garantizar mayor acceso a la justicia, estoy conforme. En su análisis expansivo, este Tribunal reconoce que un conjunto de documentos guía publicados en Internet para orientar a la ciudadanía sobre la radicación a través de un sistema electrónico puede expandir las opciones y facilidades disponibles a los individuos en sus trámites ante una agencia. De esa forma, se incorporan los documentos guía y la expectativa que crean en el público para proveer una vía

adicional en la presentación de mociones y en el trámite de asuntos ante el DACo. Así, las partes podrán presentar escritos al expediente en persona, por correo tradicional, por correo electrónico o mediante el SIAC. Descartada queda la exigencia unilateral de métodos de presentación específicos y entorpecedores cuando también se cuenta con recursos ágiles, facilitadores e inclusivos. El llamado a procurar un acceso efectivo a la justicia es una vocación continua hacia una visión amplia que facilite la disponibilidad de los instrumentos judiciales o administrativos que nuestro ordenamiento provee para la protección de derechos o resolución de conflictos. Véase, Estrella Martínez, *op. cit.*, pág. 31. En el contexto de la era digital, nos corresponde armonizar la innovación tecnológica y las normas procesales aplicables para cumplir la promesa de un sistema de atención de agravios que esté disponible a todas las personas por igual.

### III

Considero oportuno reconocer la acertada incorporación de los elementos establecidos por el Tribunal Supremo de los Estados Unidos en *Skidmore v. Swift & Co.,* 323 US—134 (1944), citado con aprobación en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024). En aquella ocasión, el más alto foro federal consideró que las determinaciones, interpretaciones y opiniones de una agencia representan un conjunto de experiencias y criterios fundamentados a los cuales los tribunales y los litigantes pueden acudir como guía. *Skidmore v. Swift & Co., supra*, pág. 140. Para definir cuánto peso darles a esos criterios agenciales, pautó lo siguiente:

> The weight of such a judgment in a particular case will depend upon **the thoroughness evident in its consideration**, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control. (Negrillas nuestras). Íd.

De esos elementos, resalto el primero con el fin de profundizar sobre nuestra adopción de los factores delineados en *Skidmore v. Swift & Co., supra*. Al momento de decidir sobre la validez de un pronunciamiento no legislativo, los tribunales deberán tomar en cuenta la minuciosidad empleada en la consideración de la

directriz en cuestión. Ese factor me parece apropiado, especialmente ante la decisión del Tribunal Supremo de Estados Unidos en *Loper Bright Enterprises v. Raimondo*, *supra*, y la *Opinión* de este Tribunal en *Vázquez et al. v. DACo*, 2025 TSPR 56, 216 DPR ___ (2025). Ambos casos marcan una tendencia tanto federal como local a favor de una inclinación menos deferente respecto a las determinaciones de las agencias administrativas cuando estas no poseen un conocimiento verdaderamente especializado en el tema o no evidencian una deliberación minuciosa o una justificación fundamentada para llegar a sus conclusiones o acciones. De esta forma, una directriz no legislativa podrá ser validada si, además de los otros factores pertinentes, también se desprende de su consideración que la agencia empleó un análisis riguroso y comprensivo.

Todavía más, subrayo que el resultado de la decisión a la que llegamos en este caso es cónsono con nuestra determinación en *Vitas Health Care v. Hospicio La Fe et al.,* 190 DPR 56 (2014). En aquella ocasión, pautamos que las agencias administrativas no pueden unilateralmente incluir cortapisas o requisitos jurisdiccionales no contemplados en ley que constituyan una barrera a la revisión judicial. Por lo tanto, validar que una resolución final exija terminantemente –como sugirió la *Resolución* que emitió el DACo en este caso– la presentación en persona o por correo de una solicitud de reconsideración, cuando la agencia tiene a su alcance un método electrónico para tramitar mociones e informa al público sobre su disponibilidad, erigiría un obstáculo impermisible para que las personas afectadas acudan en revisión. De este modo, con la decisión a la que arribamos hoy mediante una interpretación expansiva y alejada de formalismos restrictivos, facilitamos que la ciudadanía se beneficie de los avances tecnológicos que adoptan las agencias de su Gobierno. Así, se garantiza un acceso más efectivo a través de la tecnología tanto a remedios administrativos, como a la revisión judicial.

IV

Por todo lo anterior, estoy conforme con la *Opinión* que hoy emitimos en este caso. La doctrina que pautamos representa un avance para el acceso a la justicia y la interpretación liberal, no formalista, de asuntos procesales.

El Juez Asociado señor Colón Pérez concurre con el resultado sin opinión escrita. La Jueza Presidenta Oronoz Rodríguez no interviene.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo