ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (DJ 2025-031)

| MICHAEL TRICOCHE MATOS y NORDELYS RIVERA CARMONA,<br><br>Recurrida,<br><br>v.<br><br>LUIS FREIRE DIV. OF K.M.A. ASSOCIATE OF PR, INC.,<br><br>Recurrente. | KLRA202400348 | REVISIÓN procedente del Departamento de Asuntos del Consumidor.<br><br>Querella núm.: SAN-2023-0014695.<br><br>Sobre: contrato de obras y servicios. |
|---|---|---|

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 2 de diciembre de 2025.

Luis Freire Div. of K.M.A. Associate of PR, Inc. (parte recurrente o Freire), instó el presente recurso el 1 de julio de 2024. En él, solicitó que revocáramos la *Resolución* final emitida y notificada el 29 de abril de 2024, por el Departamento de Asuntos del Consumidor (DACo).

Evaluado el recurso en sus méritos[1] y la oposición al mismo, se ordena la modificación de la *Resolución* recurrida y, así modificada, se confirma.

I

Los hechos que suscitaron la presentación de la querella ante el DACo (SAN-2023-0014695) se retrotraen al 15 de enero de 2022, cuando los señores Michael Tricoche Matos y Nordelys Rivera Carmona (parte recurrida o señores Tricoche-Rivera) contrataron a Freire para el diseño, venta e instalación de una cocina italiana laqueada, cuyo fabricante era *Record Cucine*, por el precio de veintiocho mil ochocientos setenta y dos dólares ($28,872.00), más los correspondientes impuestos (11.5%),

---

[1] Cual fuese ordenado por el Tribunal Supremo de Puerto Rico en su *Opinión* emitida el 1 de octubre de 2025, 2025 TSPR 92; 216 DPR ___ (2025). En esta, el Tribunal Supremo concluyó que la solicitud de reconsideración presentada por Freire, a través del servicio en línea del DACo, había interrumpido el término para recurrir a este Tribunal de Apelaciones, por lo que ordenó que atendiéramos el recurso en sus méritos.

resultando en un total de treinta y dos mil ciento noventa y dos dólares con veintiocho centavos ($32,192.28)[2].

Comenzada la instalación de la nueva cocina, en febrero de 2023, los señores Tricoche-Rivera se percataron de que el material que se había utilizado en la cocina era laminado, y no lacado o laqueado, según lo pactado. También, observaron desniveles e imperfecciones que impedían la instalación adecuada de algunos enseres. Dichas reclamaciones fueron notificadas oportunamente a Freire, por medio de la señora Cordero Rodriguez[3], quien les ofreció alternativas para subsanar la incongruencia en el material de fabricación y las deficiencias en las medidas. No obstante, los señores Tricoche-Rivera rechazaron las opciones provistas y solicitaron la devolución total del dinero pagado[4].

El 30 de marzo de 2023, los señores Tricoche-Rivera presentaron una querella ante el DACo e imputaron a Freire haber incurrido en una práctica engañosa, incumplimiento de contrato, incumplimiento de garantía, defecto de construcción y servicio no satisfactorio. La querella fue notificada el 9 de junio de 2023[5]. Según reiterado por los recurridos, Freire incumplió con el término de entrega e instalación de la cocina. Alegaron, además, que la cocina entregada no correspondía al modelo contratado, presentaba terminaciones en laminado, errores de medidas, gabinetes que no podían instalarse y espacios incompatibles con las especificaciones provistas. Según indicaron, la cocina entregada era de calidad y valor inferiores a lo pactado, además de resultar inutilizable. En consecuencia, los señores Tricoche-Rivera solicitaron el reembolso total de lo pagado a Freire.

Posteriormente, el 7 de julio de 2023, los señores Tricoche-Rivera enmendaron su querella[6]. En esta, plantearon haber sufrido daños

---

[2] Apéndice del recurso, págs. 111-115.

[3] *Íd.*, pág. 86.

[4] *Íd.*, pág. 35.

[5] *Íd.*, págs.120-123.

[6] *Íd.,* págs.100-106.

emocionales y pérdidas económicas ascendentes a no menos de veinticuatro mil quinientos dólares ($24,500.00). Solicitaron que se ordenara a Freire la devolución total del precio pagado de treinta y dos mil ciento noventa y dos dólares con veintiocho centavos ($32,192.28); la cuantía reclamada por daños, valorados en veinticuatro mil quinientos dólares ($24,500.00); las costas y los honorarios de abogado, y una multa de diez mil dólares ($10,000.00), conforme al Art. 19 de la Ley Orgánica del DACo, 3 LPRA sec. 341r[7].

El 31 de agosto de 2023, Freire presentó la contestación a la querella enmendada[8], negó las imputaciones contenidas en la misma y alegó, afirmativamente, que había cumplido lo pactado.

Celebrada la vista administrativa y evaluada la pueba en el expediente, DACo emitió y notificó su *Resolución* el 29 de abril de 2024[9], y dispuso lo siguiente:

> **Se ordena a la parte querellada, Luis Freire Div. of KMA Associates of P.R., Inc., a, <u>dentro de un término no mayor de sesenta (60) días</u>, realizar lo siguiente:**
>
> a. **Corregir la condición de desnivel identificada en el piso de la residencia de los querellantes.**
> b. **<u>Ordenar e instalar, a su costo, nuevas puertas, todos los frentes de gavetas y todos los paneles del gabinete en el material de laca blanca al gabinete despachado.</u>**
> c. **Realizar un pago de $3,500.00 en favor de la parte querellante Michael Tricoche Matos y/o Nordelys Rivera Carmona.**
>
> **De la parte querellada no cumplir con lo aquí ordenado dentro del término provisto, la parte querellada deberá pasar a remover y recoger los gabinetes y cocina, además de realizar un pago en favor de la parte querellante Michael Tricoche Matos y/o Nordelys Rivera Carmona, por la cantidad de $26,872.00, más el interes legal acumulado sobre dicha cantidad, al tipo que fija la ley para sentencias judiciales, computado desde la fecha de notificación de esta resolución y hasta que sea satisfecho[10].**

(Negrillas en el original; subrayado nuestro).

---

[7] Por concepto de la presunta publicación de anuncios engañosos.

[8] Apéndice del recurso, págs. 83-91.

[9] *Íd.*, págs. 31-41.

[10] *Íd.*, pág. 30.

Inconforme con la determinación del DACo, el 17 de mayo de 2024, Freire presentó una moción de reconsideración, **en la cual alegó que interesaba cumplir con lo ordenado, pero que el término de 60 días era fácticamente imposible, debido a que los materiales provenían de Italia**.

Posteriormente, el 25 de junio de 2024, Freire presentó una moción en torno a cumplimiento con la resolución y planteamiento en reconsideración, en la cual indicó que había intentado iniciar el cumplimiento de la resolución final del DACo, sin embargo, los señores Tricoche-Rivera rechazaron tales gestiones. Añadió que requería un término adicional razonable[11].

El 26 de junio de 2024, los señores Tricoche-Rivera presentaron la oposición a moción en torno a cumplimiento con la resolución[12], en la cual argumentaron que Freire pudo haber cumplido con lo ordenado en la *Resolución* si hubiera utilizado métodos alternos de transporte[13]. Además, añadieron que la moción de reconsideración fue presentada fuera de término, por lo que el DACo carecía de jurisdicción para atenderla[14].

El 1 de julio de 2024, Freire incoó ante este foro el presente recurso de revisión, en el cual expuso como único señalamiento de error que:

> Erró el DACO al conceder solamente (60) dias para el cumplimiento de los remedios ordenados, lo que hacía dicho cumplimiento imposible como cuestión de hechos y forzaba a un resultado contrario conforme a las propias determinaciones de hechos y conclusiones de derecho del DACO, lo que constituye un claro abuso de discreción.

Conforme le fuese ordenado, el 17 de noviembre de 2025, la parte recurrida presentó su oposición al recurso de revisión.

---

[11] Apéndice del recurso, pág. 7.

[12] *Íd.*, págs. 1-5.

[13] *Íd.*, pág. 3.

[14] El 11 de julio de 2024, este Tribunal dictó sentencia y desestimó el recurso instado por Freire, por falta de jurisdicción. Luego de varias incidencias procesales - cuyo detalle no es necesario consignar para fines de esta sentencia -, el 6 de septiembre de 2024, Freire acudió ante el Tribunal Supremo de Puerto Rico mediante un recurso de *certiorari*. A su vez, el Tribunal Supremo acogió el recurso y, el 1 de octubre de 2025, emitió su *Opinión* y la sentencia correspondiente. El mandato fue notificado a las partes litigantes y a este Tribunal el 17 de octubre de 2025. Posteriormente, el 21 de octubre de 2025, este foro apelativo concedió a los señores Tricoche-Rivera hasta el 17 de noviembre de 2025, para presentar su oposición al recurso de revisión presentado por Freire el 1 de julio de 2024.

Perfeccionado el recurso, resolvemos.

II

A

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro,* 206 DPR 803, 919 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. FCIAS. v. Caribe Specialty II*, 179 DPR 923, 940 (2010).

Así pues, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.,* 167 DPR 684, 693 (2006). Es por ello que la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

Cónsono con lo anterior, con el propósito de "convencer al tribunal de que la evidencia en la cual se fundamentó la agencia para formular una

determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración". *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 131 (1998).

No obstante, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011); *Asoc. Fcias. V. Caribe Specialty et al. II*, 179 DPR 923, 941 (2010). Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; **(3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional**; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

Las obligaciones nacen de la ley, de los contratos y cuasicontratos, de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia, y de cualquier otro acto idóneo para producirlas, conforme con el ordenamiento jurídico. Art. 1063 del Código Civil, 31 LPRA sec. 8984. De otra parte, el Art. 1230 del Código Civil define el contrato

como "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". 31 LPRA sec. 9751. Es decir, "un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio". *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR 448, 455 (2014). Por ello, "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley". Art. 1233 del Código Civil, 31 LPRA sec. 9754.

Así pues, las partes pueden acordar cláusulas que no sean contrarias a la ley, a la moral o al orden público. Art. 1232 del Código Civil, 31 LPRA sec. 9753. Los contratos quedan perfeccionados "desde que las partes manifiestan su consentimiento sobre el objeto y la causa […]". Art. 1237 del Código Civil, 31 LPRA sec. 9771. A su vez, el Art. 1230 establece que "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". 31 LPRA sec. 3451.

C

El Código Civil de Puerto Rico dispone que todo transmitente de un bien a título oneroso responde por evicción y por los defectos ocultos del bien, aunque lo ignorase. Art. 1261 del Código Civil, 31 LPRA sec. 9851. Este deber de saneamiento opera aun cuando nada se exprese en el acto de la enajenación. Art. 1262 del Código Civil, 31 LPRA sec. 9852. Claro está, las partes pueden aumentar, disminuir o suprimir esta obligación; no obstante, la disminución o supresión de esa responsabilidad será inválida si la parte transmitente incurre en dolo. *Íd.*

También, el Tribunal Supremo de Puerto Rico ha expresado que, en el derecho de contratos, este deber de garantía se conoce como saneamiento por evicción – perturbación jurídica del derecho adquirido -, o saneamiento por vicios ocultos – perturbación económica de la posesión de la cosa. *Polanco v. Cacique Motors,* 165 DPR 156, 165 (2005). El saneamiento por vicios ocultos contempla situaciones en las que, posterior

a la entrega, se evidencian en la cosa defectos intrínsecos, que exceden las imperfecciones menores que cabe esperar normalmente en un producto determinado. *Polanco v. Cacique Motors,* 165 DPR, a la pág. 166.

Por su parte, el Código Civil añade que, ante la obligación del saneamiento por vicios ocultos, el adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente, o resolver total o parcialmente el contrato. Sin embargo, la resolución total solo procederá si la evicción o el defecto recaen sobre un aspecto determinante para la adquisición del bien. Art. 1263 del Código Civil, 31 LPRA sec. 9853. En lo pertinente, establece que, en el caso del vicio redhibitorio, **el adquirente solo tiene derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo**. *Íd.*

Así mismo, en su Art. 1267, el Código Civil define vicio redhibitorio como el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo conocido, el adquirente no lo habría adquirido o habría dado menos por él. 31 LPRA sec. 9871. También, especifica que se considera vicio redhibitorio: (a) aquel especialmente acordado como tal por las partes; (b) aquel que el transmitente garantiza que no existe; y, (c) la ausencia de la calidad convenida. Finalmente, dispone que el transmitente responde, aunque ignore la existencia del vicio redhibitorio. 31 LPRA sec. 9871

III

En el presente recurso nos corresponde determinar si el DACo erró al conceder solamente sesenta (60) días para el cumplimiento de los remedios ordenados, y si el término concedido resultaba posible a la luz de las circunstancias particulares de lo contratado.

Freire plantea que el término impuesto era fácticamente imposible de cumplir, dado que los materiales debían ser adquiridos del proveedor original en Italia. Propone que el término concedido por el foro

administrativo constituyó un abuso de discreción, que amerita ser revisado. Le asiste la razón.

Al examinar la resolución final, constatamos que el DACo impuso a Freire la obligación de adquirir e instalar, dentro del término señalado, nuevas puertas, frentes de gavetas y paneles del gabinete en material de laca blanca, conforme al contrato de compraventa de gabinetes italianos[15]. Sin embargo, la evidencia demuestra que la obtención de dichas piezas dependía de factores ajenos a su control, por tratarse de productos fabricados en Italia, cuyo tiempo de producción y embarque fluctúa entre doce (12) y dieciséis (16) semanas, según expresamente consignado en el contrato y admitido por el DACo.

De igual modo, el propio contrato advertía sobre demoras adicionales por cierres en Europa en agosto y diciembre, y sobre la inexistencia de alternativas de envío acelerado[16]. A pesar de esta realidad fáctica, plenamente acreditada y reconocida en el expediente, el DACo fijó un término de sesenta (60) días para el cabal cumplimiento, lo cual, como cuestión de hecho, resultaba incompatible con la logística contractual y con la naturaleza de la mercancía adquirida.

La irrazonabilidad de la orden administrativa se acentúa cuando se examina la consecuencia automática de su incumplimiento; a decir: la remoción total de la cocina e indemnización íntegra del precio de veintiséis mil ochocientos setenta y dos dólares ($26,872.00), más intereses legales. Esta sanción extrema contradice las propias conclusiones de derecho de la agencia, la cual expresamente determinó que los defectos en el material y las incongruencias en las medidas constituían errores subsanables, que podían corregirse mediante la sustitución de piezas, sin que procediera la resolución del contrato ni la devolución de la totalidad del precio[17]. Así, el DACo concluyó que la aquí recurrida no pudo demostrar que el

---

[15] Apéndice del recurso, pág. 111.

[16] *Íd.,* pág. 34.

[17] *Íd.,* pág. 39.

incumplimiento de Freire ameritara la resolución contractual, y que la rescisión del contrato constituiría un remedio radical e improcedente conforme a las circunstancias del caso[18].

Resulta evidente que el efecto punitivo de la orden administrativa no guarda proporción con el incumplimiento parcial y subsanable identificado en las conclusiones de hechos. Aunque el DACo reconoció que los defectos identificados eran subsanables y, por tanto, que no configuraban un vicio redhibitorio determinante para la adquisición del bien, impuso un término materialmente imposible de cumplir, cuya consecuencia natural sería el incumplimiento, y condicionó dicho incumplimiento a la sanción más severa disponible. Tal actuación constituye un ejercicio manifiestamente arbitrario y un evidente abuso de discreción.

A la luz de lo anterior, este Tribunal concluye que el DACo actuó irrazonablemente al imponer el plazo de sesenta (60) días para cumplir con los remedios ordenados y al establecer consecuencias automáticas que resultan desproporcionadas respecto a la naturaleza del incumplimiento. Se evidencia un claro abuso de discreción, que debe ser corregido mediante la modificación de la resolución, estableciendo un plazo razonable para que Freire adquiera del proveedor original las piezas necesarias y ejecute la instalación de las nuevas puertas, frentes de gavetas y paneles del gabinete en material de laca blanca, así como el pago parcial de $3,500.00 a los señores Tricoche-Rivera, sin que se genere automáticamente la remoción de la cocina, ni la devolución íntegra del precio pagado, salvo incumplimiento del nuevo término razonable.

IV

Por los fundamentos expresados, se ordena al DACo modificar la *Resolución* recurrida para que establezca un término razonable, que no será menor de sesenta (60) días, para que la parte recurrente pueda dar cabal cumplimiento a la propia *Resolución* de la agencia. De ser necesaria la celebración de una vista para determinar qué significa un "término

---

[18] Apéndice del recurso, pág. 39.

razonable" en el contexto de los hechos de este caso, el DACo podrá así disponerlo.

Así modificada, este Tribunal confirma la *Resolución* emitida por el DACó el 29 de abril de 2024.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones