Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **AMY LEE GONZÁLEZ DÍAZ**<br><br>Parte recurrida<br><br>v.<br><br>**BANCO POPULAR DE PUERTO RICO; COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO; MEDINA AUTO SALES, INC.; MOTORAMBAR INC.**<br><br>Parte recurrente | **TA2025RA00252**<br><br><br><br><br><br><br><br><br><br>CONSOLIDADO CON | **REVISIÓN ADMINISTRATIVA**<br>Procedente del Departamento de Asuntos del Consumidor<br>Oficina Regional de Caguas<br><br><br>Caso Núm.<br>**CAG-2025-006706**<br><br>Sobre:<br>**Compra venta de vehículos de motor** |
| **AMY LEE GONZÁLEZ DÍAZ**<br><br>Parte recurrida<br><br>v.<br><br>**BANCO POPULAR DE PUERTO RICO; COOPERATIVA DE SEGUROS MÚLTIPLES DE PR; MEDINA AUTO SALES, INC.; MOTORAMBAR INC.**<br><br>Parte recurrente | **TA2025RA00258** | **REVISIÓN ADMINISTRATIVA**<br>Procedente del Departamento de Asuntos del Consumidor<br>Oficina Regional de Caguas<br><br><br>Caso Núm.:<br>**CAG-2025-0006706**<br><br>Sobre:<br>**Compra venta de vehículos de motor** |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de noviembre de 2025.

Comparecen ante nos las recurrentes, Motorambar, Inc., en adelante, Motoambar, y Medina Auto Sales, Inc., en adelante, Medina Auto. El 24 de septiembre de 2025, Motorambar recurrió ante esta Curia mediante recurso de *"Revisión Judicial"*, mientras que Medina Auto radicó un recurso apelativo el mismo día. Ambos

escritos solicitaron nuestra revisión de la *"Resolución"* del Departamento de Asuntos del Consumidor, en adelante, DACo, la cual declaró *"Con Lugar"* la querella de Amy Lee González Díaz, en adelante, González Díaz o recurrida, contra las recurrentes.

Mediante *"Resolución"* del 29 de septiembre de 2025, acogimos el petitorio de Medina Auto como Recurso de Revisión Administrativa, y ordenamos a la Secretaría de nuestro Tribunal a consolidar los casos de epígrafe, en virtud de la Regla 80.1 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 106, 215 DPR ___ (2025). Afianzados los mismos, procedemos a su adjudicación en conjunto.

Por los fundamentos que expondremos a continuación, *revocamos* el dictamen recurrido.

**I.**

El 3 de julio de 2023, González Díaz compró un vehículo de motor marca KIA, modelo Carnival del año 2024 en el concesionario de vehículos Medina Auto.[1] Para el mismo, efectuó un pago de $11,703.00 en concepto de pronto. Surge de los documentos que obran en autos, que el 30 de diciembre de 2024, la recurrida compareció a Medina Auto para darle el mantenimiento de curso.[2] Sin embargo, alega González Díaz que luego de este servicio, el motor del vehículo comenzó a presentar problemas.[3] Según la recurrida, esta dejó su vehículo de motor en el concesionario el 7 de enero de 2025 para un diagnóstico.

El 14 de enero de 2025 se le autorizó a González Díaz el alquiler de un vehículo, pero lo rechazó al solicitársele una tarjeta de crédito como seguro.[4] Por ello, Medina Auto le facilitó un vehículo usado.[5] La recurrida indicó que Medina Auto, quien estuvo en

---

[1] Apéndice del recurso de Medina, pág. 13.
[2] *Id.*, pág. 20.
[3] *Id.*, pág. 9.
[4] *Id.*, pág. 74.
[5] Apéndice del recurso de Medina, pág. 74.

comunicación con ella durante el mes de enero de 2025, le indicó que estimaban entregarle el vehículo el 6 o 7 de febrero del mismo año.

Sin embargo, el 6 de febrero de 2025 la recurrente le comunicó a González Díaz sobre un daño encontrado en el motor, por lo que no podrían entregarle el vehículo. Según la propia recurrida, esta le reclamó al personal de la recurrente, ya que tenían el vehículo hacía un (1) mes, y que los desperfectos debieron ser identificados con anterioridad. La recurrida le expresó a la recurrente que se encontraba pagando un vehículo de motor que no estaba utilizando. Además, según González Díaz, Medina Auto le explicó que el nuevo defecto puede ser uno de fábrica, a lo que ella respondió que no era lógico, ya que había realizado el mantenimiento de aceite y filtro en tres (3) ocasiones, y no se le había notificado antes. La recurrida aduce que según su mejor "entender", ahora debía esperar un (1) mes más en lo que solicitaban la pieza nueva, y que eso "quiere decir" que cuando vayan a remediar el problema, y el personal de Medina Auto "encuentr[e] otra cosa adicional", ella tendría que "esperar otro mes más".[6] Por todo lo cual, redactó una querella fechada el 7 de febrero de 2025, indicándole a la recurrente que en DACo le orientaron que preparara la misma, y procediera con la querella.

Así las cosas, el 11 de febrero de 2025, González Díaz presentó formalmente su querella ante la Agencia recurrida, contra Medina Auto, Popular Auto, LLC y Motorambar.[7] En la misma, solicitó "como remedio una guagua 0 (cero) millas del año 2025", la devolución del pronto y que se le devuelvan los pagos realizados sin utilizar el vehículo. El 25 de febrero de 2025, Motorambar presentó su

---

[6] *Id.*
[7] *Id.*, pág. 10.

*"Contestación a Querella"* ante el DACo.[8] En la misma, indicó que, aunque distribuye el vehículo objeto de la controversia, no podía afirmar que el mismo había sido importado por Motorambar. Por ello, el mismo día radicó una moción, en la que solicitó la producción de documentos, al amparo del Reglamento de Procedimientos Adjudicativos del Departamento, Reglamento Número 8034 del 14 de junio de 2011.[9]

Presentada la querella, surge de los documentos que obran en autos, que Medina Auto se comunicó con la recurrida para indicarle que procedía una reparación en el motor del vehículo. Durante el mes de febrero de 2025, según la recurrente, el esposo de González Díaz le indicó que esta última deseaba un cambio de motor, no una reparación.[10] Esto detuvo los procesos, hasta tanto el fabricante se expresara con relación a esta solicitud.

Medina Auto, por otro lado, presentó su *"Contestación a la Querella"* el 28 de febrero de 2025.[11] Durante los meses siguientes, las otras partes del caso comparecieron, contestaron la querella y solicitaron la producción de documentos. Sin embargo, sostienen las recurrentes que el DACo *no realizó ni ordenó inspecciones*.[12]

Finalmente, el 7 de mayo de 2025, el fabricante se comunicó con Medina Auto para informarles que no se autorizaba el cambio de motor, y este último se dirigió a la recurrida para informarle. Fue en el mes de mayo del mismo año que se reanudaron los procesos para la reparación del vehículo de motor objeto de la controversia.[13]

Así las cosas, el 9 de mayo de 2025, el DACo emitió una *"Citación a Vista Administrativa"*, la cual pautó para el 13 de junio de 2025. Llegado el día señalado, y según los escritos de las

---

[8] Apéndice del recurso de Medina, pág. 24.
[9] Id., pág. 30.
[10] *Id.*, págs. 75 y 112.
[11] *Id.*, pág. 35.
[12] *Id*, pág. 91.
[13] *Id.*, págs. 75 y 112.

recurrentes, estas le plantearon a la Agencia recurrida que la vista señalada era prematura, ya que no se había culminado la reparación del vehículo.[14] Sin embargo, la misma fue celebrada.

El 24 de julio de 2025, el DACo notificó su *"Resolución"*.[15] En su dictamen, la Agencia recurrida notó que las recurrentes, al momento de la vista, no habían reparado el vehículo de González Díaz. Razonó que los cinco (5) meses que habían trascurridos era un tiempo razonable para haberlo hecho, y que por ello, procedía la resolución del contrato de compraventa del vehículo objeto de la controversia. También, ordenó a Medina Auto a devolverle el monto sufragado en concepto de pronto a la recurrida. Finalizó ordenando la devolución del vehículo, una vez las recurrentes hayan efectuado los pagos ordenados.

Inconforme, Motorambar presentó una *"Moción de Reconsideración"* ante el DACo, el 13 de agosto de 2025.[16] En la misma, alertó sobre ciertas declaraciones de la Agencia recurrida que no surgen en la querella ni en el expediente. Además, ripostó que durante la vista, el representante de servicio y garantía de Motorambar, quien declaró durante la misma, indicó que las piezas para la reparación del vehículo llegaban a mediados del mes de julio. Además, recapituló que al momento de la vista, no había una determinación pericial del DACo sobre los defectos del vehículo, y sobre la razonabilidad del tiempo transcurrido. Indicó que Motorambar no se ha negado a honrar la garantía del vehículo en cuestión.

Por su parte, Medina Auto también presentó una *"Moción Solicitando Reconsideración"* el 13 de agosto de 2025. Arguyó, en síntesis, que el DACo había abusado de su discreción. Además, el

---

[14] Apéndice del recurso de Medina, pág. 92.
[15] *Id.*, pág. 73.
[16] *Id.*, pág. 89.

22 de agosto de 2025, Medina Auto radicó una *"Moción Informativa"* para indicarle al Foro Recurrido que el vehículo de González Díaz había sido reparado, y estaba disponible para ser entregado.[17]

Finalmente, el 26 de agosto de 2025, DACo notificó su *"Resolución en Reconsideración"*, y declaró las mociones de la recurrentes *"No Ha Lugar"*.

Por tanto, el 24 de septiembre de 2025, las recurrentes comparecieron ante esta Curia impugnando la determinación del DACo. En su recurso, *Medina Auto* expuso el siguiente señalamiento de error:

> **ERRÓ EL HONORABLE FORO AL ORDENAR LA RESCISIÓN DEL CONTRATO DE COMPRAVENTA Y POR CONSIGUIENTE DEVOLVERLE A LA QUERELLANTE LA SUMA DE $11,703.00 ENTREGADO COMO PRONTO PAGO Y EL PAGO DE AQUELLAS SUMAS DE DINERO QUE LA QUERELLANTE HABRÍA PAGADO AL BANCO POPULAR DE PUERTO RICO.**

Por su parte, *Motorambar* planteó los siguientes errores:

> **ERRÓ EL DACo AL DECRETAR LA RESOLUCIÓN DEL CONTRATO CUANDO LA RECURRENTE NO HA TENIDO 'OPORTUNIDAD RAZONABLE' PARA REPARAR EL VEHÍCULO DE LA RECURRIDA.**

> **ERRÓ EL DACo EN SU INTERPRETACION DE LA REGLA 22 DEL REGLAMENTO 7159 AL APLICAR EL ESTANDAR DE VICIOS OCULTOS SIN EVIDENCIA SUSTANCIAL EN EL EXPEDIENTE ADMINISTRATIVO QUE FUNDAMENTE QUE EL VEHÍCULO ADOLECE DE DEFECTOS NO REPARABLES O QUE MERMEN SU VALOR.**

Mediante *"Resolución"* del 29 de septiembre de 2025, ordenamos la *consolidación de ambos recursos*. Luego, el 1 de octubre de 2025, concedimos a la recurrida hasta el 24 de octubre para presentar su escrito en oposición. Así, el 23 de octubre de 2025, González Díaz compareció ante nos mediante *"Alegato en Oposición"*. Perfeccionado el recurso de epígrafe, procedemos a resolver.

---

[17] Apéndice del recurso de Medina, pág. 117.

**II.**

**A. Revisión Judicial de Decisiones Administrativas**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Tricoche Matos y otro v. Luis Freire,* 2025 TSPR 92, 216 DPR ___ (2025); *Vázquez et al v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances,* 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Id.*

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalqcua v. Quirós, Betances,* supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

Ahora bien, es harto conocido en nuestro ordenamiento jurídico, que los tribunales deben brindarles la mayor deferencia posible a las decisiones administrativas, por gozar estas de una

presunción de validez proveniente de la experiencia que se le atribuye a las mismas. *Katiria's Café, Inc vs. Mun. San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473, 484 (2024); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM,* 178 DPR 163, 175 (2010). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero deben examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa. *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *Otero v. Toyota,* 163 DPR 716, 729 (2005).

Esto es así, toda vez que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección debido a su vasta experiencia y conocimiento especializado, lo que significa que estas merecen deferencia por parte de los foros judiciales. *Transp. Sonell v. Jta. Subastas ACT,* supra; *Otero Rivera v. USAA Fed. Savs. Bank,* supra, pág. 484; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 754; *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro,* supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde,* supra, pág. 126; *Rolón Martínez v. Supte. Policía,* supra, pág. 35; *González Segarra v. CFSE,* 188 DPR 252, 276 (2013); *Mun. de San Juan v. CRIM,* supra, pág. 175.

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAUG, supra, establece que serán

sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. LPAUG, *supra*, sec. 9675. Así, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, supra, págs. 88-89; *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 128; *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

Por su parte, la LPAUG, supra, sec. 9675 dispone que "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. A esos efectos, nuestro Tribunal Supremo aclaró recientemente que, a través de la precitada disposición, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realicen las agencias administrativas. *Vázquez, Torres v. Consejo Titulares et al.,* supra.

Así, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la Agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021).

En síntesis, ante una revisión judicial, el tribunal tomará en consideración lo siguiente: (a) presunción de corrección; (b) especialización del foro administrativo; (c) no sustitución de criterios; (d) deferencia al foro administrativo; y (e) que la decisión administrativa solo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de

prueba sustancial del expediente que constituyen un abuso de discreción.

**B. Departamento de Asuntos del Consumidor**

El Derecho Administrativo es, precisamente, el mejor campo para observar la forma y manera en la que el Gobierno ejecuta sus facultades y potestades, pues, aquel gobierno que establece normas y política pública sin la estructura y la capacidad de materializarlas ha de ser uno irrelevante. En ese sentido, las Agencias y el Derecho Administrativo son pieza fundamental del Estado y sus administradores en la ejecución de su política pública. Este nace como resultado de la necesidad del gobierno en generar conocimiento especializado para satisfacer las necesidades de una sociedad cada vez más compleja. *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 699 (2024). Véase, además, J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 5ta ed. rev., San Juan, Ed. Situm, 2023, págs. 1-4.

Como regla general, las Agencias Administrativas son entidades creadas por la Asamblea Legislativa y adscritas al Poder Ejecutivo. En Puerto Rico la Sección 16 del Artículo III de la Constitución de Puerto Rico concede a la Asamblea Legislativa la facultad de crear, consolidar o reorganizar departamentos ejecutivos y definir sus funciones. Art. III, Sec. 16, Const. ELA, LPRA, Tomo I. De esta forma, la Asamblea Legislativa ha delegado a las agencias administrativas -adscritas al Poder Ejecutivo- una serie de facultades, a través de la ley orgánica o de leyes especiales. *R&B Power, Inc. v. Junta de Subastas ASG*, supra, pág. 700; *FCPR v. ELA et al.,* 211 DPR 521, 536 (2023).

Como parte de esa delegación de poderes, tradicionalmente, le son otorgadas funciones cuasi legislativas y *cuasi judiciales* a las Agencias Administrativas. De la función cuasi legislativa se

desprende el poder de reglamentar dentro de los límites y parámetros establecidos en su ley habilitadora. Mientras, que de la función *cuasi judicial* se le confiere el poder de adjudicar controversias dentro de la pericia de la agencia. Véase *R&B Power, Inc. v. Junta de Subastas ASG*, supra, pág. 700; *Caribe Comms., Inc. v. PRTC*, 157 DPR 203, 211 (2002).

A tenor con lo anterior, mediante la Ley Núm. 5 del 23 de abril de 1973, según enmendada, *Ley Orgánica del Departamento de Asuntos del Consumidor*, se crea la Agencia Gubernamental, del Departamento de Asuntos al Consumidor, conocido comúnmente como DACo. Esta agencia fue creada como una especializada con el propósito primordial de vindicar e implantar los derechos del consumidor y proteger los intereses de los compradores. Artículo 3 de la Ley Núm. 5 del 23 de abril de 1973, supra, 3 LPRA sec. 341b.

### C. Reglamento de Garantías de Vehículos de Motor del DACo

Por otro lado, el legislador le adjudicó al DACo la responsabilidad de velar por el cumplimiento de todas las leyes relacionadas con los derechos de los consumidores. *Ortiz v. Soler Auto Sales et al*, 202 DPR 689,696 (2019). Las garantías requeridas a los fabricantes y distribuidores de vehículos de motor están reguladas por la Ley de Garantías de Vehículos de Motor, en adelante Ley de Garantías, Ley Núm. 7 de 24 de septiembre de 1979, 10 LPRA sec. 2051 et seq.

La precitada Ley fue creada con el propósito de ofrecerle protección estatutaria a los compradores y consumidores, de manera que se les garantice que los fabricantes de vehículos honren las garantías ofrecidas, las garantías que otorgan a los vehículos en los Estados Unidos continentales y que brinden servicio de garantía en Puerto Rico. Ley de Garantías, supra, sec. 2053.

A tales efectos, y en virtud de esta Ley, el consumidor descansa en que los fabricantes, distribuidores y vendedores se responsabilizarán por los defectos de fábrica de los que sufra un vehículo de motor nuevo. Ley de Garantías, supra, secs. 2060 y 2061.

DACo, en virtud de su deber de vindicar e implementar los derechos del consumidor y el Artículo 13 Ley de Garantías, supra, sec. 2063, adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159, del 6 de junio de 2006, en adelante, Reglamento 7159. El referido reglamento persigue que los vehículos sirvan al propósito para el cual fueron adquiridos, reunan las condiciones necesarias para garantizar al comprador la protección de la vida y propiedad, y prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. Regla 2, Reglamento 7159, supra.

La Regla 19 del Reglamento 7159, supra, dispone que cuando un vehículo de motor nuevo requiera reparaciones por un periodo mayor a cinco (5) días, "el consumidor podrá exigir un vehículo con transmisión similar al que dejó en reparación".

Si bien es cierto que, el Reglamento en cuestión faculta al DACo para resolver un contrato, ello procede cuando se demuestre que el distribuidor, vendedor o manufacturero no haya reparado el vehículo, o habiendo tenido una oportunidad razonable para ello, se haya rehusado. *Polanco v. Cacique Motors*, 165 DPR 156, 164-165 (2005); *Ford Motor Co. v. Benet*, 106 DPR 232, 238 (1977). Surge, además, de nuestra jurisprudencia, que es el DACo quien "determinará caso a caso lo que constituye 'oportunidad razonable'". *Polanco v. Cacique Motors,* supra, pág. 165.

Lo anterior fue adoptado estatutariamente, en virtud de la Regla 22 del Reglamento 7159, supra, el cual reza de la siguiente manera:

El Departamento podrá a opción del comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo la oportunidad razonable para reparar uno o más, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable para reparar se determinará tomando en consideración las circunstancias particulares de cada caso.

### III.

Los errores planteados por las recurrentes se funden para argüir, en síntesis, que el DACo abusó de su discreción al aplicar la normativa que encausa la controversia. Sostiene Medina Auto y Motorambar que la resolución del contrato no procedía, en virtud de que estas habían realizados los esfuerzos que en derecho les correspondía para responder por los daños del vehículo de la recurrida. *Les asiste la razón.* Por estar relacionados los errores de ambas recurrentes, discutiremos los mismos en conjunto.

Si bien es cierto que las determinaciones de hecho de las agencias gozan de una presunción de regularidad, las conclusiones de derecho no. Aunque estamos facultados para revisar estas últimas en su totalidad, con relación a las determinaciones de hecho, es nuestra responsabilidad evaluar si las mismas responden, entre otras cosas, al expediente judicial. Adelantamos, por lo tanto, que es nuestra apreciación que, en el caso de marras, las conclusiones del DACo no se justifican a la luz del expediente administrativo.

Por la naturaleza de la controversia – un vehículo de motor con defectos alegadamente de fábrica – nos alarma que no se haya realizado una inspección, o no se haya despachado un técnico de la Agencia para evaluar el mismo. Justipreciamos que la Agencia recurrida leyó y escuchó los argumentos de ambas partes, y basado

únicamente en ello, adjudicó credibilidad. Aunque esto, en sí, no es contrario a derecho, las conclusiones a las que arribó el DACo en su *"Resolución"* no se pueden justificar únicamente en ello. Por ejemplo, en su aplicación del derecho, la Agencia en cuestión concluyó que las recurrentes tuvieron una oportunidad razonable para reparar "uno o mas defecto y no lo han corregido", en un periodo de cinco (5) meses.

Primeramente, en su determinación de hecho número doce (12), el DACo recoge lo levantado por las recurrentes, relevante a la solicitud que les hizo la recurrida, sobre el reemplazo del motor, en lugar de su reparación. Por ello, se detuvieron los esfuerzos de reparación hasta el mes de mayo del año 2025, cuando el fabricante les informó que no autorizaba el reemplazo del motor, sino solo la reparación de este. Es decir, los testimonios creídos y recogidos en la *"Resolución"* recurrida no sostienen el análisis de razonabilidad suscrito al periodo de cinco (5) meses entre la presentación de la querella y la vista. Esto, ya que no es hasta el mes de mayo – menos de dos (2) meses antes de la vista administrativa – que el proceso para reparar el motor fue reanudado.

Por otro lado, concluir que las recurrentes pudieron y debieron reparar el defecto conocido – y cualquier otro – en el periodo aludido nos parece una conclusión irrazonable, toda vez que presupone una información técnica que, sin el desfile de prueba pericial, difícilmente puede ser evidenciada.

Con relación a esto último, la recurrida aduce en su escrito en oposición ante esta Curia que "[l]a agencia administrativa no está obligada a requerir prueba pericial externa cuando los hechos relevantes se establecen de manera clara y no controvertida por la misma parte afectada por la decisión". Y es precisamente el hecho de que no obra en el expediente prueba alguna que establezca de

manera clara las alegaciones de González Díaz, lo que nos impide confirmar el dictamen.

La recurrida aduce que las recurrentes no fueron diligentes, incumplieron con las garantías de Ley y procedieron de mala fe. Sin embargo, más allá de las molestias provocadas por el inconveniente de tener que entregarle su vehículo de motor a Medina Auto para diagnóstico y reparación, la recurrida no evidenció los alegados incumplimientos y la mala fe de las recurrentes. De hecho, es nuestra apreciación que, a la luz de lo narrado por la propia recurrida en su querella, González Díaz dificultó irrazonablemente el proceso de diagnosticar y reparar el vehículo. Según esta, y lo esbozado en las determinaciones de hecho de DACo, la recurrida se rehusó en tres (3) ocasiones a las soluciones y acomodos ofrecidos por las recurrentes.

Sin embargo, por lo expuesto en la querella, los escritos de Medina Auto y Motorambar, y el dictamen recurrido, las recurrentes cumplieron con lo requerido estatutariamente en estos casos. Primeramente, estas le proveyeron a González Díaz un vehículo de motor mientras el suyo se encontraba en reparación, conforme a las exigencias de la Ley. Además, se mantuvieron en constante y diligente comunicación con la recurrida, según avanzaba el proceso de diagnóstico. Surge, además, que dentro de sus capacidades, intentaron honrar los pedidos de esta.

Contrario a lo concluido por el DACo, si bien es cierto que las recurrentes no pudieron ofrecer una fecha de entrega del vehículo reparado durante la vista, esto se debió a que las piezas ya ordenadas no llegaban hasta mediados del mes de julio del año 2025. Tan es así, que para la fecha del 22 de agosto de 2025, el mismo ya había sido reparado y estaba listo para ser entregado.

Concluimos, por lo tanto, que la agencia recurrida abusó de su discreción al arribar a conclusiones que requerían de un expediente más completo y robusto.

**IV.**

Por los fundamentos que anteceden, *revocamos y dejamos sin efecto la "Resolución" recurrida.* Reparado el vehículo de motor objeto de la controversia dentro de los contornos del derecho aplicable, *ordenamos la devolución del mismo a la recurrida,* sin ningún otro pronunciamiento.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones