Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| COMPUTER & GAMES, INC., Y OTROS<br><br>Apelantes<br><br>v.<br><br>COMISIÓN DE JUEGOS DEL GOBIERNO DE PUERTO RICO<br><br>Apelada | TA2025AP00143 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV05354 (808)<br><br>Sobre: *Injunction* Preliminar y Permanente |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard y la jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 14 de enero de 2026.

Comparece ante nos Computer & Games, Inc.; C & K Entertainment, Corp.; RBS Entertainments Group, Corp.; Secundino Trinidad De La Cruz; DJRR Entertainment, Inc.; Bosque Vending Machine, LLC; Carlos Vega González; Juan P. Espinal; Juana Reyes Santana y WEP, LLC (en conjunto, "los Apelantes") mediante *Apelación* presentada el 17 de julio de 2025. Nos solicitan la revocación de la *Sentencia* dictada y notificada el 15 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *Ha Lugar* la moción de desestimación instada por la Comisión de Juegos del Gobierno de Puerto Rico ("Comisión de Juegos" o "Apelada"). El foro *a quo* concluyó en su dictamen que los Apelantes debieron agotar los remedios administrativos disponibles, previo a la radicación de la demanda que inició el presente pleito.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen apelado.

## I.

El 13 de junio de 2025, los Apelantes presentaron *Demanda* sobre *injunction* preliminar y permanente contra la Comisión de Juegos y el Estado Libre Asociado de Puerto Rico.[1] Por virtud de este escrito, los Apelantes alegaron que "fueron dueños y operadores de máquinas de entretenimiento para adultos y a quienes de manera arbitraría e ilegal se le ha denegado la obtención de la licencia que autoriza la operación de máquinas de juegos de azar en ruta en virtud de los Artículos 132 al 165 de la Ley Número 257 de 10 de diciembre de 2018, según enmendada".[2] En concreto, esgrimieron que la *Ley de la Comisión de Juegos del Gobierno de Puerto Rico*, Ley Núm. 81-2019, según enmendada, 15 LPRA sec. 981 *et seq.* ("Ley Núm. 81-2019"), transfirió a la Comisión de Juegos los asuntos concernientes a las actividades de juegos de azar que se encontraban, hasta ese momento, bajo la jurisdicción de la Compañía de Turismo. Explicaron que el esquema que existe al amparo de la *Ley de Máquinas de Juegos de Azar*, Ley Núm. 11 de 22 de agosto de 1933, según enmendada, 15 LPRA sec. 82, *et seq.*, autorizó la operación de unas veinticinco mil (25,000) máquinas de entretenimiento para adultos en ruta. Abundaron que las mencionadas máquinas se distribuirían entre un número reducido de operadores.

Adujeron los Apelantes que "para escoger dichos operadores, o dueños mayoristas, la Ley de Máquinas de Juegos de Azar en Ruta estableció un periodo de 90 días en donde solo se aceptarían

---

[1] Véase, SUMAC TPI, Entrada 1. Véase, además, SUMAC TPI Entrada 9 en la cual, el 18 de junio de 2025, el foro primario emitió *Sentencia Parcial* en la que declaró *Ha Lugar* una moción de desestimación incoada por el Estado Libre Asociado de Puerto Rico y, en consecuencia, ordenó el cierre y archivo del caso en cuanto a esta parte.

[2] Véase, SUMAC TPI, Entrada 1, pág. 2.

solicitudes de aquellos individuos o corporaciones que hayan tenido licencias de máquinas de entretenimiento para adultos vigentes durante el año 2018".[3] No empece a lo anterior, detallaron que la Compañía de Turismo no otorgó licencia de máquinas de entretenimiento para adultos en el año 2018. Como corolario de ello, argumentaron que, ante esto, en Puerto Rico no hay quien tenga derecho a que se le conceda prioridad al momento de solicitar la licencia en cuestión.

Con lo anterior expuesto, los Apelantes añadieron que, en el año 2021, la Comisión de Juegos comenzó a expedir las licencias en controversia. Entre otras cosas, los Apelantes alegaron que comparecieron a la Comisión de Juegos para solicitar la referidas licencias pero fueron "informados por el personal de la Comisión que no podían aceptar sus solicitudes y que no 'perdieran el tiempo' solicitando porqué sino tenían licencias de máquinas de entretenimiento para adultos para el año 2018 no iban a entrar entre los alrededor de 100 operadores que iban a ser escogidos".[4] Además, argumentaron que, algunos de los Apelantes "lograron hablar con el entonces Director de la Comisión, Orlando Rivera Carrión, quien les repitió que aunque quisiera ayudarlos no iba a poder aceptar sus solicitudes porqué [sic] no tenían licencias de máquinas de entretenimiento para adultos vigentes durante el término que dice la Ley, que las licencias de dueños mayoristas que iba a otorgar la Comisión 'ya tenían nombre y apellido' y que se le iban a dar a ciertas personas que estaban en vías de solicitarlas".[5]

Ante este cuadro, los Apelantes aludieron que, a pesar de sus reclamos, se escogieron alrededor de cien (100) operadores que presuntamente tenían licencia de máquina de entretenimiento para

---

[3] Véase, SUMAC TPI, Entrada 1, pág. 4.
[4] Véase, SUMAC TPI, Entrada 1, pág. 5.
[5] Véase, SUMAC TPI, Entrada 1, pág. 5.

adultos vigentes al 2018. Vale destacar que los Apelantes sostuvieron que este proceso de expedición de licencias fue "irregular y sospechoso" y por tanto, le solicitaron al foro primario que dictara Sentencia en los siguientes términos:

a) Declarando que el proceso seguido por la Comisión de Juegos del Gobierno de Puerto Rico para la adjudicación de licencias de dueño mayorista de máquinas de juegos de azar en ruta, conforme al esquema implementado en el año 2021, es inconstitucional, violatorio de los derechos de igual protección de las leyes y debido proceso de ley de los demandantes.

b) Declarando que la Comisión de Juegos actuó ultra vires y en contravención de los principios de legalidad y objetividad al otorgar licencias bajo una clasificación arbitraria e inexistente, en violación de la Ley Núm. 257-2018, la Ley Núm. 81-2019.

c) Ordenando la nulidad y revocación de todas las licencias de dueño mayorista de máquinas de juegos de azar en ruta expedidas en virtud del proceso viciado de 2021.

d) Expidiendo un injunction preliminar y permanente para:

   i. Detener de inmediato la emisión, renovación y cobro de licencias de dueño mayorista de máquinas de juegos de azar en ruta, conforme al esquema actual;

   ii. Suspender cualquier acción administrativa que conlleve la imposición de sanciones, multas o medidas coercitivas contra los establecimientos que no posean las licencias obtenidas bajo el proceso viciado.

e) Ordenando a la Comisión de Juegos que:

   i. Conduzca un nuevo proceso de solicitud y adjudicación de licencias de dueño mayorista, conforme a criterios legales, objetivos, transparentes y abiertos, y en el cual los demandantes puedan participar en igualdad de condiciones con cualquier otro solicitante;

   ii. Se abstenga de conferir o mantener ventajas indebidas a los beneficiarios del proceso anterior viciado.

f) Imponiendo a la parte demandada el pago de costas y honorarios de abogado por temeridad y obstinación en continuar actuando de forma ultra vires a pesar de tener pleno conocimiento, en los términos que estime el Tribunal.

g) Concediendo cualquier otro remedio equitativo y de derecho que el Tribunal estime justo y apropiado para proteger los derechos de los demandantes y restablecer el estado de derecho en el proceso de expedición de las licencias impugnadas.[6]

---

[6] Véase, SUMAC TPI, Entrada 1, págs. 11-12.

Por su parte, el 21 de junio de 2025, la Comisión de Juegos presentó *Moción Solicitando Desestimación*.[7] En esencia, esgrimió que el *injunction* no es el mecanismo adecuado para determinar la constitucionalidad o validez de las determinaciones realizadas por la Comisión de Juegos. Asimismo, expuso que los Apelantes incurrieron en incuria al impugnar y solicitar la nulidad de licencias que fueron emitidas desde hace cuatro (4) años. Cónsono con lo anterior, enfatizó que el foro primario carecía de jurisdicción pues los Apelantes debieron llevar sus reclamos a los foros administrativos pertinentes y agotar todos los remedios que tenían disponibles. Por tal motivo, solicitó que se desestimara con perjuicio el presente pleito.

En respuesta, el 24 de junio de 2025, los Apelantes presentaron *Oposición a Desestimación*.[8] En lo pertinente, argumentaron que en la presente controversia, no era necesario agotar remedios administrativos pues los únicos asuntos a resolver, eran los siguientes: "a) si se vendieron licencias de máquinas de entretenimiento para adultos en el 2018 y b) si la Comisión de Juegos, podía darle prioridad al momento de emitir licencias de dueños mayoristas de máquinas de juegos de azar en ruta a personas y entidades que no tenían licencias para máquinas de entretenimiento para adultos vigentes para el año 2018".[9] Aludieron que estos asuntos no requerían el *expertice* de la Comisión de Juegos, ya que solo se necesitaba examinar si se aplicó correctamente el derecho.

Evaluado los argumentos de las partes, el 15 de julio de 2025, el foro primario dictó y notificó *Sentencia*.[10] Por virtud de esta, el foro primario determinó que tanto la Compañía de Turismo, como la

---

[7] Véase, SUMAC TPI, Entrada 10.
[8] Véase, SUMAC TPI, Entrada 14.
[9] Véase, SUMAC TPI, Entrada 14, págs. 11-12.
[10] Véase, SUMAC TPI, Entrada 16.

Comisión de Juegos habían promulgado varios reglamentos que establecen los procedimientos a seguir ante la denegatoria de la expedición de una licencia. El foro *a quo*, abundó que los Apelantes "han contado con una amplia gama de reglamentos que contemplan mecanismos y remedios disponibles para ser solicitados ante la Comisión de Juegos".[11] En esa dirección, el foro primario concluyó lo siguiente:

> Sin lugar a duda, en este caso los Demandantes no agotaron los remedios administrativos a su disposición y tampoco son de aplicación ninguna de las excepciones de esta doctrina. Según previamente discutido, la Sección 4.3 de la LPAU, establece que el tribunal puede relevar a un litigante de tener que agotar los remedios administrativos en aquellos casos en que:

>> [el] remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673.[12]

A tono con este análisis, el foro *a quo* concluyó que carecía de jurisdicción para atender el presente caso por falta de agotamiento de remedios administrativos. En consecuencia, desestimó la demanda incoada por los Apelantes.

Inconforme con este resultado, el 17 de julio de 2025, los Apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al declarar Ha Lugar la Moción de Desestimación radicada bajo la Regla 10.2(5) de Procedimiento Civil y dar por ciertos los hechos alegados en esta sin la celebración de una Vista.

> Erró el Tribunal de Primera Instancia al concluir que no tiene jurisdicción para atender esta controversia y que la misma debe de tramitarse ante el Foro Administrativo.

---

[11] Véase, SUMAC TPI, Entrada 16, pág. 18.
[12] Véase, SUMAC TPI, Entrada 16, pág. 19.

Acompañaron su escrito con una *Moción en Auxilio de Jurisdicción* mediante la cual, entre otros remedios, le solicitó a este Tribunal de Apelaciones que ordenara "a la Comisión de Juegos a abstenerse de ejecutar, continuar, implementar o consolidar el esquema de licencias impugnado hasta tanto se dilucide el presente recurso apelativo".[13] Asimismo, en igual fecha, los Apelantes presentaron *Solicitud de Vista.* Así las cosas, el 23 de julio de 2025, esta Curia declaró *No Ha Lugar* la moción en auxilio de jurisdicción.

Por su lado, el 7 de agosto de 2025, la Comisión de Juegos presentó *Alegato en Oposición a Escrito de Apelación y Solicitud de Desestimación por Falta de Jurisdicción.* Tras varios trámites procesales, el 18 de septiembre de 2025, esta Curia emitió *Resolución* en la cual pautó la vista oral solicitada para el 7 de noviembre de 2025.

Luego de celebrada la vista, el 14 de noviembre de 2025, los Apelantes presentaron *Moción Informativa* y *Moción en Relación a Documentos Anejados a "Moción Informativa.* Además, el 25 de noviembre de 2025, los Apelantes presentaron otra *Moción Informativa.* En reacción a estos escritos, el 1 de diciembre de 2025, esta Curia emitió *Resolución* en la que se ordenó el desglose de las mociones antes mencionadas y se le apercibió a las partes que debían abstenerse de presentar documentos salvo estos fueran requeridos.

Con el beneficio de la comparecencia de ambas partes, evaluado el expediente ante nuestra consideración y escuchados los planteamientos esbozados ante esta Curia en la vista oral, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

---

[13] Véase, SUMAC TA, Entrada 2.

## II.

### A. *Desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil*

En nuestro esquema procesal, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a la parte demandada solicitar la desestimación de la acción legal antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Inmob. Baleares et al. v. Benabe et al.* 214 DPR 1109, 1128 (2024) citando a *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). La precitada regla fija los siguientes fundamentos para solicitar la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio;** y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).

En lo pertinente, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra,* permite la desestimación de una demanda bajo el fundamento de que no expone una reclamación que justifique la concesión de un remedio. En este contexto, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda que hayan sido aseverados de manera clara y concluyente y, a su vez, considerarlos de la forma más favorables a la parte demandante. *BPPR v. Cable Media,* 215 DPR___ (2025) 2025 TSPR 1, pág. 11.

No obstante, para que prevalezca una moción de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra,* esta debe establecer "con toda certeza que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su

reclamación, aun interpretando la demanda de la forma más liberal posible a su favor" (citas omitidas). *Díaz Vázquez et al. v. Colón Peña et al.,* 214 DPR 1135, 1150 (2024).  Por ello, el Tribunal Supremo de Puerto Rico ha explicado que "una demanda no debe ser desestimada a menos que la razón para solicitar el remedio no proceda bajo el supuesto de derecho alguno, ni pueda ser enmendada para subsanar cualquier posible deficiencia". *Íd.*

### B. La Ley de Máquinas de Juegos de Azar

En nuestro ordenamiento jurídico, las máquinas de juegos electrónicos de entretenimiento para adultos, así como las máquinas de juegos de azar o tragamonedas, están reguladas por la *Ley de Máquinas de Juegos de Azar*, Ley Núm. 11 de 22 de agosto de 1933, según enmendada, 15 LPRA sec. 82, *et seq.*

Cónsono con la política pública dispuesta en la legislación anterior, el 10 de diciembre de 2018, la Asamblea Legislativa aprobó la Ley Núm. 257-2018. Esta Ley  enmendó varias leyes, entre éstas el *Código de Rentas Internas para un Nuevo Puerto Rico,* Ley Núm. 1-2011, según enmendada, 13 LPRA sec. 30041. *et seq.* y la *Ley de Máquinas de Juegos de Azar, supra.* En concreto, la Ley Núm. 257-2018 incorporó una nueva Sección 9 a la *Ley de Máquinas de Juegos de Azar, supra*, a los fines de concedera la Compañía de Turismo de Puerto Rico la facultad de expedir licencias para la operación de máquinas de juegos de azar, en aquellos casos que el solicitante cumpla con los criterios de concesión de licencia establecidos mediante reglamentación.

Posteriormente, tras la aprobación de Ley Núm. 81-2019, según enmendada, 15 LPRA sec. 981 *et seq.*, las aludidas facultades conferidas a la Compañía de Turismo de Puerto Rico fueron transferidas a la recién creada Comisión de Juegos del Gobierno de Puerto Rico.

### C. La Comisión de Juegos de Puerto Rico

La *Ley de la Comisión de Juegos del Gobierno de Puerto Rico*, Ley Núm. 81-2019, *supra*, se aprobó a los fines de establecer la política pública del Gobierno de Puerto Rico respecto a las apuestas en eventos deportivos y otras actividades a fines. Así pues, al amparo de este estatuto, se creó la Comisión de Juegos del Gobierno de Puerto Rico ("Comisión de Juegos") la cual:

> regirá, fiscalizará y tendrá jurisdicción sobre todos los asuntos de la industria de las apuestas autorizadas por internet, en deportes, ligas de juegos electrónicos, tales como eSports y concursos de fantasía (fantasy contests). Igualmente tendrá jurisdicción sobre los asuntos dispuestos en la Ley Núm. 221 de 15 de mayo de 1948, según enmendada, conocida como la "Ley sobre Juegos de Azar y Autorización de Máquinas Tragamonedas en los Casinos", así como en la Ley Núm. 83 de 2 de julio de 1987, según enmendada, conocida como la "Ley de la Industria y el Deporte Hípico de Puerto Rico". Véase, Artículo 2.2 15 LPRA sec. 982a.

En ese sentido, la *Ley de la Comisión de Juegos del Gobierno de Puerto Rico* enmendó la *Ley Sobre Juegos de Azar y Autorización de Máquinas Tragamonedas en los Casinos*, Ley Núm. 221 de 15 de mayo de 1948, según enmendada, 15 LPRA sec. 71 nota *et seq.* y la *Ley de Máquinas de Juegos de Azar*, Ley Núm. 11 de 22 de agosto de 1933, según enmendada, *supra*, a los efectos de otorgar a la Comisión de Juegos jurisdicción sobre los asuntos contenidos en ambas leyes.

A la luz del marco jurídico antes expuesto, el Artículo 7.3 de la *Ley de la Comisión de Juegos del Gobierno de Puerto Rico, supra*, establece que:

> Todos los reglamentos, órdenes, resoluciones, cartas circulares y demás documentos administrativos que gobiernan la operación de los organismos, programas, servicios y funciones que mediante esta Ley pasan a formar parte de la Comisión y que estén vigentes al entrar en vigor esta Ley, siempre que sean cónsonos con la misma, continuarán vigentes hasta tanto los mismos sean expresamente alterados, modificados, enmendados, derogados o sustituidos por el Secretario.
>
> Se dispone que cualquier ley, orden ejecutiva, orden administrativa, reglamento, resolución, carta circular o documento análogo donde se haga referencia a

cualesquiera de las entidades o divisiones consolidadas, queda por la presente enmendada para que en adelante se refiera a la Comisión de Juegos del Gobierno de Puerto Rico donde antes se refería a la Compañia de Turismo o a la Junta Hípica; y al Director Ejecutivo de la Comisión donde antes se refería al Administrador Hípico y Administración Hípica.

Los Reglamentos sobre las funciones que se transfieren a la Comisión, continuarán vigentes hasta tanto los mismos sean expresamente alterados, modificados, enmendados, derogados o sustituidos por la Comisión.

### D. Agotamiento de Remedios Administrativos

En nuestro ordenamiento jurídico existe la norma jurisdiccional que evita que los tribunales intervengan cuando se haya incumplido con el requerimiento de agotar remedios administrativos ya que dicha doctrina "procura que cuando una parte desea obtener un remedio en una agencia, dicha parte tiene el deber de utilizar todas las vías administrativas a su alcance para ello antes de recurrir al foro judicial". *Guzmán y ortos v. ELA*, 156 DPR 693, 711 (2002).

Es decir, "el propósito de la doctrina es determinar la etapa en la cual el litigante puede recurrir a los tribunales". *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004). De esta manera, se evita "una intervención judicial innecesaria y a destiempo que interfiera con el cauce y desenlace normal del proceso administrativo" (citas omitidas). *AAA v. UIA*, 199 DPR 638, 656 (2018). En armonía con lo anterior, el Tribunal Supremo de Puerto Rico ha explicado que esta doctrina tiene varios objetivos, a saber:

> [P]ermitir que la agencia pueda desarrollar un historial completo del asunto ante su consideración; asegurar que la agencia pueda adoptar las medidas correspondientes en conformidad con la política pública formulada por la entidad, y evitar los disloques causados por las intervenciones inoportunas de los tribunales en distintas etapas interlocutorias. Por otro lado, la doctrina en cuestión facilita la revisión judicial, ya que asegura que los tribunales tengan información más precisa sobre el asunto en controversia y les permite tomar una decisión más informada. De igual forma, promueve una distribución más eficiente de tareas entre los poderes ejecutivo y judicial. *AAA v. UIA*, 200 DPR 903, 914 (2018).

No obstante, esta norma admite excepción en cualquiera de los siguientes supuestos:

> (1) dar curso a la acción administrativa cause un daño inminente, material, sustancial y no teórico o especulativo; (2) el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrezca un remedio adecuado; (3) la agencia claramente no tenga jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o (4) el asunto es estrictamente de derecho. *ORIL v. El Farmer Inc.,* 204 DPR 229, 240 (2020).

Sobre las excepciones, nuestro Tribunal Supremo ha dicho que "el mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo" (Cita omitida). *Procuradora Paciente v. MCS, supra,* pág. 37.

### E. Injunction

El recurso de *injunction* se rige en parte por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y por el *Código de Enjuiciamiento Civil de Puerto Rico* de 1933, 32 LPRA 3421, *et seq.* Este último define el recurso de *injunction* como sigue:

> El *injunction* es un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra. 32 LPRA sec. 3421.

Este recurso extraordinario pretende "prohibir u ordenar la ejecución de un acto, para evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, cuando no hay otro remedio en ley adecuado." *Mun. Fajardo v. Srio. Justicia et al.,* 187 DPR 245, 255 (2012).

> Para determinar si procede el recurso extraordinario de *injunction* hay que detectar si la acción connota o no un agravio de patente intensidad al derecho del individuo que reclame una reparación urgente. Constituye, por lo tanto, un daño irreparable aquel que no puede ser satisfecho adecuadamente mediante la utilización de los remedios legales disponibles. De ahí que la parte promovente deberá demostrar que de éste no concederse, sufriría un daño irreparable. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 40 (2010).

A los efectos de establecer un daño irreparable, un *injunction* procede "cuando una compensación pecuniaria no habría de proporcionar un remedio adecuado". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho procesal civil,* 6ta ed., San Juan, 2017, sec. 5705, pág. 591. El *injunction* es "un remedio altamente discrecional" que debe "expedirse con cautela y solamente cuando el caso es claro". *Íd.*

En sintonía con lo anterior, la Regla 57.3 de Procedimiento Civil, *supra,* enumera ciertos criterios que ha de cumplirse para que se pueda expedir un *injunction* preliminar:

> Al decidir si expide una orden de entredicho provisional o injunction preliminar, el tribunal deberá considerar, entre otros, los siguientes:
>
> (a) La naturaleza del daño a que está expuesto la parte peticionaria;
>
> (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;
>
> (c) la probabilidad de que la parte promovente prevalezca;
>
> (d) la probabilidad de que la causa se torne en académica;
>
> (e) el impacto sobre el interés público del remedio que se solicita, y
>
> (f) la diligencia y la buena fe con que ha obrado la parte peticionaria. 32 LPRA Ap. V R. 57.3

### F. Sentencia Declaratoria

El mecanismo de sentencia declaratoria le confiere la facultad al tribunal "para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio". Regla 59.1 de Procedimiento Civil, *supra.* Está declaración del tribunal "podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y vigor de las sentencias o resoluciones definitivas". *Íd.* Su uso es adecuado "para declarar derechos, estados y otras relaciones de naturaleza jurídica" independientemente de que existan otros remedios. *Alcalde Guayama v. ELA,* 192 DPR 329, 333 (2015).

Este mecanismo es útil para finalizar situaciones de incertidumbre o inseguridad en cuanto a derechos, pues viabiliza

que un ciudadano pueda dilucidar ante los tribunales los méritos de cualquier reclamación que en forma latente entrañe un peligro potencial en su contra. *Charana v. Pueblo*, 109 DPR 641, 653 (1980)

De otra parte, la Regla 59.5 de Procedimiento Civil, *supra*, dispone que:

> Cuando se solicite un remedio declaratorio deberán incluirse como partes todas aquellas personas que tengan o aleguen tener algún interés que pueda ser afectado por la declaración, y ninguna declaración perjudicará los derechos de personas que no sean partes en el procedimiento. En cualquier procedimiento en que se discuta la validez de una ordenanza o franquicia municipal, el municipio correspondiente deberá ser incluido como parte, notificándose, además, al Secretario o Secretaria de Justicia en conformidad con lo dispuesto en la Regla 21.3. 32 LPRA Ap. V R. 59.5.

### III.

En el presente caso, los Apelantes nos solicitan la revocación de la *Sentencia* dictada y notificada el 15 de julio de 2025 por el foro primario. En concreto, estos aluden que el foro *a quo* incidió en declarar *Ha Lugar* la moción de desestimación instada por la Comisión de Juegos, sin llevarse a cabo una vista para ello. De igual forma, apuntan como segundo error, que el foro *primario* falló al concluir que carecía de jurisdicción y que el presente pleito debió ventilarse ante el foro administrativo. Veamos.

Por encontrarse íntimamente relacionados entre sí, discutiremos los dos (2) señalamientos de error esgrimidos por los Apelantes de forma conjunta. Se desprende del expediente ante nuestra consideración que la *Demanda* presentada por los Apelantes, gira en torno a la concesión de unas licencias para operar unas máquinas de juegos de azar en ruta. Por virtud de dicho escrito, alegaron que, en el año 2021, la Comisión de Juegos les concedió a ciertas entidades unas licencias de dueño mayorista de máquinas de juegos de azar mediante un esquema inconstitucional. En armonía con lo anterior, los Apelantes solicitaron una serie de remedios, entre estos, la expedición de un *injucntion* preliminar y

permanente para detener, declarar la nulidad y revocar la emisión de las aludidas licencias. Además, solicitaron que se declarara inconstitucional el proceso de concesión de estas licencias que se llevó a cabo en el año 2021.

Por no coincidir con lo expresado, el 21 de junio de 2025, la Comisión de Juegos presentó *Moción Solicitando Desestimación.* La Apelada señaló, entre otros argumentos, que el foro primario carecía de jurisdicción para atender los reclamos de los Apelantes, pues estos debieron dilucidar dichos requerimientos previamente ante el foro administrativo. De igual forma, argumentó que los Apelantes no acumularon partes indispensables en este pleito.

En primer lugar, es norma firmemente reiterada, que ante una solicitud de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, *supra,* el foro primario únicamente debe "tomar como ciertos todos los hechos bien alegados en la demanda que hayan sido aseverados de manera clara y concluyente y, a su vez, considerarlos de la forma más favorables a la parte demandante". *BPPR v. Cable Media,* supra, pág. 11. Contrario a lo alegado por los Apelantes, **ello no obliga al foro *a quo* a celebrar vista alguna**. El foro primario simplemente debe "establecer con toda certeza que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor". *Díaz Vázquez et al. v. Colón Peña et al., supra,* pág. 1150. Por tanto, es forzoso concluir que el foro primario no incurrió en falta alguna ni tampoco incidió en el debido proceso de ley que les asiste a las partes, por el mero hecho de no haber celebrado vista previa a la adjudicación de la *Moción de Desestimación* presentada por la Comisión de Juegos al amparo de la Regla 10.2 de Procedimiento Civil, *supra.*

Habiendo establecido lo anterior, procedemos a atender en los méritos la controversia planteada ante nuestra consideración. Según hemos expresado anteriormente, en síntesis, los Apelantes solicitaron "la nulidad y revocación de todas las licencias de dueño mayorista de máquinas de juegos de azar en ruta expedidas en virtud del proceso viciado de 2021".[14] Es menester resaltar que la industria de juegos de azar es una altamente regulada por el Estado. En ese sentido, la Asamblea Legislativa, de **manera diáfana,** estableció que a la "Comisión [de Juegos del Gobierno de Puerto Rico] **queda facultada para expedir licencias para la operación de Máquinas de Juegos de Azar**, si determinara, a base de toda la información disponible, que el solicitante **satisface los criterios de concesión** de licencia establecidos mediante Reglamento" (Énfasis nuestro). 15 LPRA sec. 84e. Asimismo, la Sección 10 de la aludida *Ley de Maquinas de Juegos de Azar, supra,* facultó a la Comisión de Juegos para aprobar la reglamentación necesaria que establezca el proceso para la concesión de las licencias en cuestión.

En armonía con lo anterior, el 9 de octubre de 2020, la Comisión de Juegos publicó un comunicado dirigido a potenciales dueños mayoristas, operadores y dueños de máquinas de juegos de azar. En dicho comunicado, la Comisión de Juegos anunció lo siguiente:

> El 5 de septiembre de 2020, el formulario sobre "Solicitud de Licencia para Dueños Mayoristas u Operadores y Dueños de Negocio de Maquinas de Juegos de Azar en Ruta" fue publicado en la página cibernética de la Comisión. Luego de diversos procesos administrativos de rigor que condujimos en la Comisión, a partir del **15 de octubre de 2020**, aquellas personas o entidades interesadas en ser autorizados como Dueños Mayoristas u Operadores de máquinas de juegos de azar en ruta podrán presentar la correspondiente solicitud.[15]

---

[14] Véase, SUMAC TPI, Entrada 1, pág. 12.
[15] Véase, SUMAC TPI, Entrada 10, Anejo 1, Documento intitulado *Fecha de comienzo para la presentación de "Solicitud de licencia para dueños mayoristas u operadores y dueños de negocio de máquinas de juegos de azar en ruta"*

Vale destacar que, en el caso de marras, según consta en el expediente y lo vertido por las partes en la vista oral celebrada ante esta Curia **el 7 de noviembre de 2025**, únicamente dos (2) de los Apelantes, a saber, Juana Reyes Santana y WEP, LLC, solicitaron las mencionadas licencias. En el caso concreto de Juana Reyes Santana, se le incluyó en una lista de espera.[16] En cuanto a WEP, LLC, estos incumplieron con entregar una serie de documentos que eran requisitos para completar el proceso de solicitud de licencia.[17] Respecto al resto de los Apelantes, **éstos no sometieron la solicitud formal de la licencia en controversia ante la Comisión de Juegos**.[18]

Al amparo de la expresa delegación por parte de la Asamblea Legislativa a la Comisión de Juegos en cuanto a lo concerniente a la expedición de las licencias en controversia, somos del criterio que los Apelantes **debieron presentar formalmente una solicitud de licencia ante la Comisión de Juegos y de la misma resultar desfavorable, ventilar sus reclamos ante este foro administrativo previo a acudir a los tribunales**. Es preciso resaltar que en nuestro ordenamiento jurídico "las agencias ostentan dos facultades esenciales, a saber: el poder de reglamentar y el poder de adjudicar controversias". *Tricoche Matos y otra v. Luis Freire Div. of K.M.A. Associates of PR, Inc.*, 216 DPR ___ (2025), 2025 TSPR 92, pág. 4. Conforme se desprende del expediente, la Comisión de Juegos cuenta no solo con reglamentación a los efectos de expedir las licencias en cuestión, sino que también ostenta mecanismos para adjudicar las controversias que surjan a raíz de dicho proceso de solicitud de licencias. Y es que tal y como señalamos, los Apelantes debieron seguir el procedimiento

---

[16] Véase, SUMAC TPI, Entrada 10, Anejo 2.

[17] Véase, SUMAC TPI, Entrada 10, Anejo 3.

[18] Véase, Regrabación de Vista Oral llevada a cabo el 7 de noviembre de 2025, en la que los Apelantes explicaron por qué no sometieron la solicitud de licencia. Min. 55:55-min. 59:49.

dispuesto en el *Reglamento para la Expedición, Manejo y Fiscalización de Licencias de Maquinas de Juegos de Azar en Ruta*, Reglamento Núm. 9175 de 5 de mayo de 2020,[19] expedido por la Compañía de Turismo de Puerto Rico y el cual **era cuerpo normativo vigente al momento de la otorgación de las licencias impugnadas**. Dicho reglamento disponía un procedimiento para solucionar controversias, el cual los Apelantes debieron utilizar previo a acudir al tribunal. A su vez, los Apelantes también tenían a su disposición el proceso contenido en el Reglamento Núm. 9423 de 27 de diciembre de 2022, intitulado *Reglamento de Procedimientos Adjudicativos ante la Comisión de Juegos del Gobierno de Puerto Rico*, el cual se promulgó para adelantar la solución de controversias que surjan en asuntos que se encuentren bajo la jurisdicción de la Comisión de Juegos. No albergamos dudas de que los precitados reglamentos proveen mecanismos adecuados que los Apelantes pudieron utilizar para exponer sus reclamos. Ante esto, es preciso subrayar que "**el mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo**" (Énfasis nuestro). *Procuradora Paciente v. MCS*, supra, pág. 37.

Tras evaluar detenidamente tanto el expediente ante nos, así como los argumentos de las partes en los alegatos y en la vista oral, colegimos que los Apelantes **no lograron** probar que, **en este caso, se deba prescindir de agotar los remedios administrativos**. Concretamente, los Apelantes **no demostraron que**, en el caso de marras, **aplicara algunas de las siguientes excepciones a la utilización de la doctrina de agotamiento de remedios administrativos reconocidas en nuestro ordenamiento jurídico**:

---

[19] Vale destacar que, el Reglamento Núm. 9175 fue derogado por el *Reglamento para la Expedición, Manejo y Fiscalización de Licencias de Maquinas de Juegos de Azar en Ruta*, Reglamento Núm. 9647 de 22 de enero de 2025.

> (1) dar curso a la acción administrativa cause un daño inminente, material, sustancial y no teórico o especulativo; (2) el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrezca un remedio adecuado; (3) la agencia claramente no tenga jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o (4) el asunto es estrictamente de derecho. *ORIL v. El Farmer Inc.,* 204 DPR 229, 240 (2020).

Por tanto, colegimos que no obra evidencia alguna en el expediente que demuestre la necesidad de aplicar alguna de las excepciones que permiten obviar la doctrina de agotamiento de remedios administrativos.

De otra parte, conviene puntualizar que, si bien el foro primario fundamentó su *Sentencia* al amparo de la doctrina de agotamiento de remedios administrativos, en el presente caso se encuentran presente otras circunstancias que, de igual manera, privan de jurisdicción al foro *a quo*. En la *Demanda* instada por los Apelantes, éstos solicitaron que el foro primario dictara *Sentencia*:

> a) Declarando que el proceso seguido por la Comisión de Juegos del Gobierno de Puerto Rico para la adjudicación de licencias de dueño mayorista de máquinas de juegos de azar en ruta, conforme al esquema implementado en el año 2021, es inconstitucional, violatorio de los derechos de igual protección de las leyes y debido proceso de ley de los demandantes.
>
> b) Declarando que la Comisión de Juegos actuó ultra vires y en contravención de los principios de legalidad y objetividad al otorgar licencias bajo una clasificación arbitraria e inexistente, en violación de la Ley Núm. 257-2018, la Ley Núm. 81-2019.[20]

En esencia, aunque los Apelantes no lo aclararon en su escrito y no consta en el epígrafe del recurso ante nos, estos solicitaron que el foro primario le concediera una sentencia declaratoria decretando los estados jurídicos previamente citados.[21] Como es harto conocido, el remedio extraordinario de la sentencia declaratoria está regulado por la Regla 59 de Procedimiento Civil, *supra*. En concreto, la Regla 59.5 establece lo siguiente:

---

[20] Véase, SUMAC TPI, Entrada 1, págs. 11-12.
[21] En la Vista Oral llevada a cabo el 7 de noviembre de 2025, los Apelantes esgrimieron que presentaron una solicitud de sentencia declaratoria. Min. 37:57- 38:02.

Cuando se solicite un remedio declaratorio, **deberán incluirse como partes todas aquellas personas que tengan o aleguen tener algún interés que pueda ser afectado por la declaración, y ninguna declaración perjudicará los derechos de personas que no sean partes en el procedimiento.** En cualquier procedimiento en que se discuta la validez de una ordenanza o franquicia municipal, el municipio correspondiente deberá ser incluido como parte, notificándose, además, al Secretario o Secretaria de Justicia en conformidad con lo dispuesto en la Regla 21.3 (Énfasis nuestro).

Nótese que, los Apelantes le solicitaron al foro *a quo* que se declare mediante sentencia, la inconstitucionalidad de la concesión de unas licencias otorgadas en el año 2021. Según el expediente, dichas licencias fueron concedidas a más de cien (100) operadores y las máquinas se encuentran distribuidas en aproximadamente tres mil ochocientas (3,800) localidades alrededor de la Isla. Todas estas partes se verían afectadas ante el remedio solicitado por los Apelantes. Sin embargo, estas no fueron traídas al pleito. En tal sentido, **los Apelantes no acumularon partes indispensables en esta controversia**. Ello representa un impedimento jurisdiccional para que el foro primario entre a los méritos del caso. Ahora bien, vale destacar que, si bien este asunto referente a la falta de parte indispensable no fue un asunto resuelto en la *Sentencia* apelada, al tratarse de un planteamiento jurisdiccional, el mismo puede ser atendido por esta Curia. Véase, *Souffront v. A.A.A.*, 164 DPR 663, 674 (2005).

En fin, en armonía con los fundamentos previamente esbozado, es forzoso concluir que el foro primario **carecía de jurisdicción para atender el presente recurso**. En vista de lo anterior, ninguno de los dos (2) señalamientos de error esbozados por los Apelantes se cometieron, por lo que corresponde **confirmar el dictamen apelado**.

**IV.**

Por los fundamentos previamente esbozados, **confirmamos** la *Sentencia* Apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones